COURT OF APPEALS, (E. S.) JUNE TERM, 1820.

PRATT'S Lessee *vs.* FLAMER, *et al.*

A devise to *F.* and her heirs *lawfully begotten,* and in case she dies *without heirs,* remainder over, gives *F.* only an estate tail.

A devise to *F* for life, remainder over *to her issue,* and in case the issue dies without heirs, remainder over to B, the issue takes only an estate for life—the words *without heirs,* preceding the last remainder, meaning *heirs of the body only,* and not being sufficient to enlarge the interest of the first remainderman into a fee simple.

A devise to an unborn illegitimate child, where the mother is described, is valid.

Devises to two illegitimate children, and in case either shall *die without heirs,* then her part shall go to the survivor,—the word *heirs* means *issue,* and not heirs generally.

APPEAL from *Talbot* County Court. *Ejectment* for three tracts of land, viz. *Piccadilly, Vickar's Venture,* and

*Dunn's Range.* The questions submitted to the court by the statement of facts, arose under the following devises in the will of *William Vickars,* dated the 26th of August 1774, viz. "I give, devise and bequeath, unto *my loving wife Sarah Vickars,* my home plantation called *Piccadilly,* and part of *Dunn's Range, during her life.*" "I give and bequeath unto my loving wife *Sarah Vickars,* five negroes, viz. &c. *during her life,* and after her decease, the aforesaid lands and negroes to go to my daughter *Elizabeth Vickars.*" "I give, devise and bequeath, unto my daughter *Elizabeth Vickars,* my plantation called *Vickars' Venture,* to *her and her heirs (lawfully begotten) for ever;* and in case she dies *without heirs,* to return to my loving wife *Sarah Vickars.*" "I give and bequeath to my daughter *Elizabeth Vickars,* four negroes, viz. &c. *to her and her heirs for ever;* and in case she dies *without heirs,* to return to my loving wife *Sarah Vickars.*" "In case there should be any issue in nine months from this date, I give and bequeath my home plantation aforesaid called *Piccadilly,* and part of *Dunn's Range,* after the decease of my loving wife *Sarah Vickars, to the said* issue. "*In case my children die without heirs,* I give and bequeath my aforesaid lands and negroes unto my brother *Jacob Garron,* (after the decease of my loving wife *Sarah Vickars) to him and his heirs for ever.*" It was admitted that *Sarah,* the wife of the testator, survived him, and died in 1801, and that she had no issue except her daughter *Elizabeth,* who was the only child of the testator; that *Elizabeth* also survived her father, intermarried with *Charles Price,* and died in 1789, in the life-time of her mother. That *Jacob Garron* also survived the testator, and on the 2d of April, 1783, duly made and executed his will, whereby he devised to his daughter *Henrietta Palmer,* daughter of *Rebecca Palmer,* the one half of his estate, of whatever it might consist, after his just debts were paid; and the other half to the child that *Rebecca Palmer* was then big with, if it should live, and if it should die without heir, then he devised it unto the said *Henrietta Palmer,* her and her heirs for ever; if either of the children should *die without heir,* then he devised their part to the other. It was also admitted that *Henrietta Palmer* survived the last mentioned testator, and died in 1801, before she attained the age of 21 years, and without issue. That at the time when *Garron* made his will, *Rebecca Palmer* was ensient of and with a female child, who was

June 1820.

Pratt
vs.
Flattery.

born soon after the decease of *Garron*, and named *Ann*, and that she was born long before the death of *Henrietta*, and intermarried with *Philemon Pratt*, which said *Philemon*, together with the said *Ann*, made the demise set forth in the declaration, and that the said *Ann* is the surviving lessor of the plaintiff. . It was also admitted that the said *Henrietta* and *Ann* were illegitimate children, the daughters of *Rebecca Palmer* by *Garron*, and that *Garron* was the half brother of *William Vickars*, both born of the same mother, but of different fathers. The county court gave judgment on the case stated for the defendants, and the plaintiff appealed to this court.

The cause was argued in this court before Chase, Ch. J. Buchanan, Johnson, Martin and Dorsey, J.

*Kerr*, for the appellant, contended that *Elizabeth Vickars* took an estate tail. *Co. Litt.* 3 *Salk.* 336. 4 *Bac. Ab.* 256. 7 *Co.* 41. *Moore.*—A devise to an unborn infant is valid, and will take effect when the child is born. 4 *Bac. Ab.* 246. *Pow. on Dev.* 328. *Elizabeth Vickars* and the issue, if any, took cross remainders in tail. Where a devisee takes an express estate tail, it is not to be enlarged by implication. 4 *Bac. Ab.* 290. And as the estate tail could not be enlarged by implication, they therefore took cross remainders in tail. The word *heirs* in the will must mean *heirs of his body*. 4 *Bac. Ab.* 259. *Wille's Rep.* 165, 369, 370. *Elizabeth Vickars*, and the issue, took cross remainders in tail by implication. 2 *Blk. Com.* 381. 4 *Bac. Ab.* 290. 2 *East* 36. 1 *Saund.* 105. *(Note 6)*.

On the death of *W. Vickars*, *Garron* had an estate in remainder in fee, after the estates tail. If *Garron* had an interest it was devisable by him. A devise to an illegitimate child unborn, is valid if the mother be described. *Co. Litt.* 3. *b.* 1. *P. Wms.* 2 *Roll. Ab.* 43, 44. *Moore*, 430. By the word *heirs*, *Garron* meant heirs of the body; for being illegitimate they could have no heirs except *issue* of the body, and therefore the remainder over is valid. If an alien be made a denison, and his heirs remainder over, this is an estate tail, because he would have no heirs except of his body. 3 *Buls.* 193, 195. The same words are not necessary in a will as in a deed. The intention is to govern. 3 *T. R.* 135, 136, *Cowp.* 410.

Hammond for the appellees. The intention of a testa-
tor must prevail, if consistent with the rules of law. It
was the intention of *W. Vickars* to give the personal estate
in the same manner as the real, but the remainder over is
void, as too remote. The inheritance would have gone to
*Elizabeth* as the heir at law. Cross remainders are only
where the estate is given in tail. *2 Blk. Com.* 381. There
can be no cross remainders except in estates tail. More
than two cannot take cross remainders, except the intenti-
on is plain and manifest. The land called *Piccadilly* was
unquestionably given to *Elizabeth* in fee, to be defeated
on the birth of the issue; but as there was no issue born,
the fee remained. She also took a fee in *Vickars' Ven-
ture*. *Bacon* in his abridgment says, a devise to A and his
heirs *lawfully begotten*, is an estate *in fee tail*. He refers
to *Moore's Reports*, which do not support the position. In
the case in *Moore* the entail was created by the words *if
she die without fruit of her body*. The words *lawfully be-
gotten*, are no more than would be implied; for none can
be heir except lawfully begotten. *2 Ld. Raym.* 1145. As
to what words create an estate tail by grant. *Co. Litt.* 20, *b.*
It is essentially necessary, in order to create an estate
by will, that words should be inserted confining the heirs
to some body. *2 Ld. Raym.* 1145. The words "to him
and his heirs lawfully begotten for ever," were adjudged
an estate in fee. *1 Harr. & M'Hen.* 336. If an estate
in fee was vested in *Elizabeth Vickars*, can the limitation
over, change the nature of the estate? In every instance
where lands are devised in fee, and if the devisee dies
without heirs, the devisor means by the word *heirs*, issue.
Such is the intention, whether the remainder over be to a
connexion of the first devisee, or to a stranger. A devise
over, after a fee, is void. *Cowp.* 234. If the limitation
over, after an estate in fee is given, is to a stranger, it is
void; but if to one who could be heir to the devisee, it is
valid. The first devisee's estate is reduced to an estate
tail. *1 Ves.* 89. Could *Garron* claim unless there had
been issue born within 9 months, and such issue had died
without heirs? Both contingencies must happen. A stranger
never can take a remainder after a dying without *heirs*. That
word is never construed *issue*, except where the remainder
man was capable of *inheriting*. An express devise in tail
is not to be enlarged by implication. Under the will of

June 1820.

*Pratt*
*vs.*
*Flamer.*

*Garron* it is admitted that *Henrietta* took an estate in fee in one half. But the devise to an unborn *illegitimate* child is void. If it was valid as to the portion devised to her, yet she was not entitled to the portion devised to her sister. Originally a devise to a person *in ventre* was void. *Pow. on Dev.* 320. The authorities to prove that an unborn illegitimate child cannot take as devisee, are *Cro. Eliz.* 509. 1 *P. Wms.* 530. *Pow. on Dev.* 339. *Fern.* 175, 176. 2 *Blk.* 170. If the unborn child could not take the part devised to her, neither can she take the part devised to her sister. As the half devised to *Henrietta* was in fee, the remainder over on her death without *heirs* is void as being too remote. If a fee can be given to a bastard, then a limitation over *must be void.* It is the same as to a *denison.* A grant to a bastard and *his heirs*, and if he dies without heirs, remainder over is void, although the bastard could have no heir except issue. 2 *Ld. Raym.* 1152. If she died without *heir,* is the same as without *heirs.* *Pow. on Dev.* 426. 4 *Com. Dig.* 216.

*Bullitt*, in reply. It is certain that *W. Vickars* designed that the property, on certain events occurring, should go to *Garron.* He intended to entail it on *Elizabeth*—remainder to his wife for life—remainder to *Garron.* A fee tail only passed. The words *lawfully begotten forever,* must pass a *fee tail.* The word *heir,* in that part of the will, must mean *issue,* for the testator never intended a total *failure* of heirs. He knew the difference between a *fee tail* and a *fee simple.* To *Garron* a clear *fee simple* is given. 3 *Com. Dig.* 26. *Co. Litt.* 20. *b.* Although in the case cited from *Moore* there were other words in the will, besides the words *lawfully begotten*, sufficient to pass the *fee tail,* yet the opinion of the court is formed as well on those words as on the others. If they had any effect they were sufficient to pass the estate tail. The case in 2 *Ld. Raym.* 1152, is of a deed, and not a will. In 2 *Harr. &amp; M'Hen.* 336, there is no limitation over after the words *lawfully begotten.* The cases cited in favour of a fee's passing were cases of grants, and it was relied on that there was *no limitation over.* If *Vickars'* Venture was devised in tail, then that estate is not enlarged by the subsequent words on which the remainder over to *Garron* is made to depend. In case she dies without *heirs,* means such heirs as were before described; that is, heirs of the body. It is

admitted that the subsequent words by implication cannot

enlarge the estate. If the estate tail is not enlarged by
the words "*in case my children die without heirs,*" then it
must necessarily follow, that the remainder over is valid;
for it is not a remainder after a fee, but after an estate tail.
The devise *to the issue,* was only an estate for life, except
the subsequent words operate, and they can only operate
to give an estate tail. *Piccadilly* was only given to the
*unborn issue,* (if such issue had come into existence,) for
life, except the estate is enlarged by the subsequent words.
If the child was not born, then *Elizabeth* was to have
*Piccadilly* in the same manner as she was to have *Vickars'
Venture.* But the words used by which the estate was
given were sufficient only to pass an estate for life, except
it is enlarged by the subsequent words; and if enlarged by
them, then an estate tail passed; if not, the remainder
over to *Garron* was after estates for lives were given, and
therefore valid. When an intermediate estate is intended
to take effect by the birth of a child, if the child is not
born, the remainder takes an immediate effect. 1 *Willes'
Rep.* 105. *Cowp.* 40. *Fern.* 163, 164. If a child had been
born, it with *Elizabeth* took cross remainders in fee tail.
If *Elizabeth* took an estate in fee, then the limitation over
may be supported as an executory devise—as if they died
without heirs, living the mother. They died during the
life of the mother. What passed under *Garron's* will?
*Henrietta Palmer* took one half of the estate. The other
half he gives to the child that *Rebecca Palmer* was then
big with. It is contended that the devise is void by the
policy of the law. The devise is *valid;* for it is given, and
the description is only the child that *Rebecca Palmer* was
then pregnant with—not as his child. Limitation to an
unborn bastard is good, if described with certainty. *Roll.
Ab. Noy,* 35. In *Cro. Eliz.* there was no decision on the
subject. The judges differed in opinion, and it is said by
*Fenner,* that upon a consultation with the other judges,
the majority were favourable to the bastard. In 1 *P. Wms.*
530, it was decided, that the after born children could not
take, and because they had not got by reputation to be
thought the children of the testator's son. The remainder
over to the unborn child it is said is void, being a fee on a
fee. If the children had been legitimate then they would
have taken estates tail; for neither could die without heir,

living the other sister—As they were illegitimate, there could be no heir except they had issue.    A gift to a bastard, and his heirs, is a fee.    2 *Ld. Raym.* 1152.    This was not a will.                                  *Cur. Adv. Vult.*

JOHNSON, J. at this term, delivered the opinion of the Court.

This was an action of ejectment brought to recover three tracts of land, to wit, *Piccadilly, Vickars' Venture,* and *Dunn's Range;* the cause was tried on a case stated, and judgment given in favour of the defendant.

The case stated in substance is, that *William Vickars* being seized in fee of two of the tracts, *Piccadilly* and *Vickars' Venture,* on the 27th of August 1774, in due form of law made his last will and testament, in which are the following clauses:

1st. "I give and bequeath to my loving wife *Sarah Vickars,* my home plantation called *Piccadilly, during her life.*"

2d. And by the next clause he gave her five negroes by name, *also during life,* and after her death the negroes and land to go "to my daughter *Elizabeth Vickars.*"

3d. "Item. I give and bequeath unto my daughter *Elizabeth Vickars,* my plantation called *Vickars' Venture, to her and her heirs, (lawfully begotten,) for ever;* and in case she dies *without heirs,* to return to my wife *Sarah Vickars.*"

4th. And by the next clause he gave to his said daughter four negroes by name, *to her and her heirs for ever,* "in case she dies without heirs to return to my wife *Sarah.*"

5th. "Item. In case there should be any issue in nine months from this date, I give and bequeath my home plantation aforesaid called *Piccadilly,*" (and the five negroes first given to his wife,) "after the decease of my loving wife *Sarah Vickars, to the said issue.*"

6th. Item.   *In case my children die without heirs,* I give and bequeath my aforesaid lands and negroes, unto my brother *Jacob Garron,* (after the decease of my loving wife *Sarah Vickars,) to him and his heirs for ever.*"

That shortly after the execution of the will, the testator died; *Elizabeth Vickars* intermarried with *Charles Price,* and died in 1789, without issue. *Sarah,* the mother, died in 1801 without having another child born after the date of the will.

*Jacob Garron*, the brother of *Wm. Vickars*, survived June 1820. him, and died on the 2d of April 1783, having first in due form made and executed his last will and testament, the material parts of which are—"I give and bequeath unto my daughter *Henrietta Palmer*, daughter of *Rebecca Palmer*, the one half of my estate of whatever it may consist in, after my just debts are paid."

Margin: Pratt vs. Flamer.

"Item. I give and bequeath the other half of my estate unto the child *Rebecca Palmer* is now big with, if it lives, and if it should die without *heir*, then I give and bequeath it unto the said *Henrietta*, her and her heirs for ever; if *either* of the children *die without heir*, then I give and bequeath their part to the other." *Henrietta* survived the testator, and died about the year 1801, a minor, and without issue. *Rebecca Palmer*, at the time the will of *Garron* was made, was pregnant with a daughter, who was born soon after the decease of *Jacob Garron*, and her name was *Ann*, who intermarried with *Philemon Pratt*, by whom, in conjunction with his wife, the present ejectment was brought.

Several questions are made under these wills: The *first* is, that *Jacob Garron* took no interest under the will of *Vickars*.

*Second.* If any interest passed to him, it was confined to *Vickars' Venture*, and did not extend to *Piccadilly*.

And supposing that an estate was vested in the whole real property of *W. Vickars* in *Jacob Garron*; yet *first*, that the *after born child of Rebecca Palmer being illegitimate* took nothing by the first devise to her—and *secondly*, if she was entitled to the one half of the estate, yet that the remainder over to her of *Henrietta's* part was void.

From the state of the case, and from the will of *William Vickars*, it is most evident what was the testator's design. He had a wife, one child, and the probability of having a child born after his decease, these were the persons he intended to provide for, and that accomplished, his brother was the next person that engaged his attention. He appears from the will to have understood the nature of the different estates he designed to carve out: a life estate, an estate tail, and a fee simple; and such his intention will be carried into effect, if it can be done consistent with the rules of law, if not it must yield to them.

By the first and second clauses of the will, the real and personal property devised to his wife *for life*, on her death

June 1820.

Pratt
·vs.
Flamer.

is to go *to her daughter Elizabeth*, without expressing the extent of the interest given to *Elizabeth*.

By the third clause the real property, that is *Vickars' Venture*, is given to *Elizabeth and her heirs, (lawfully begotten,) for ever.* And by the fourth clause the negroes are given to *her and her heirs for ever.*

It will be observed, that the only clause in the will, in which the words "lawfully begotten" are inserted, is the one that gives *Vickars' Venture* to *Elizabeth;* these words are not to be rejected in the construction of the will, if they are calculated to elucidate the intention, and to make that intention consistent with the principles of law; and if the effect of those words is to turn the estate that was given into a fee tail, which would be a fee simple without their aid, and thereby give effect to the ulterior clauses that otherwise would be void, certainly that interpretation must be given to them that will make all the parts of the will effectual *ut res magis valeat quam pereat.*

From the elaborate argument this case underwent, all the light that could have been, has been cast on the subject, and after the most industrious researches, no case has been found, where the words *in a will* "lawfully begotten," with a *limitation* over, has been construed a *fee simple.* Few cases exist on the subject, and although in the case reported in *Moore's* Reports, cited in the argument, there were other words that were calculated to create an estate tail, yet the words *lawfully begotten,* were relied on as forming a part of the foundation on which it was determined the estate in question was entail.

In *Comyn's Digest*, and by *Hargrave* in his notes on *Coke Littleton,* those words, *lawfully begotten,* in a will, are sufficient to pass an estate tail. No case from the *English* authorities has been produced, where those words in a will, where no remainder over was given, have been adjudged to pass a fee simple; and it may be sufficient to say, that in the case cited from 1 *Harris and M'Henry* 336, there was *no limitation over*, and therefore that case is not like the one under consideration. The limitation over is of important consideration, for every part of the will must be taken together, and the construction formed from all its parts, so as to give effect to the whole, unless some principle of law is thereby violated; but if *Elizabeth Vickars* takes an *estate tail* in *Vickars' Venture*, then, the limitation

*in fee* to *Jacob Garron*, is valid, and such, in the opinion of the court, is the true interpretation of the will.

By the will, *Piccadilly* is devised to the wife for life, and on her death to *Elizabeth*, but in case the contemplated child had been born, *Piccadilly*, on the death of the mother, was to go to such child. As then no estate of inheritance was given in *Piccadilly*, the *devisees*, as such, took only estates for life, unless that interest was enlarged by the subsequent parts of the will. No matter in whom the inheritance existed, they, as devisees, were not entitled to it, unless the estates for lives were enlarged into a fee simple, and if so, as the remainder to *Garron* was to *take effect, after the failure of the heirs,* it is too remote, and therefore void. We have seen that all the devisees, as such, took only estates for life, in *Piccadilly*, under those clauses of the will purporting to *dispose of* that tract. Do the words in the will, describing the event on which *Garron* was to take, so enlarge their estates as *to defeat* the interest *intended* to be given to him?

"In case my children die without *heirs*, then I give and bequeath my aforesaid lands and negroes to *Jacob Garron*, to him and his heirs for ever."

Are those words necessarily to be understood as meaning heirs general, or may they not be confined to heirs, proceeding from the persons of the devisees, and be construed issue? That the word *heirs* will not always apply to heirs generally is most certain, frequent are the instances of that word being confined to mean issue; and it is impossible to read carefully the will in question to doubt, but by that word, in the clause *restricting* the land from passing from his children, he meant issue; for in the preceding clauses of the will, whenever he points out the event on which he designed the property to go from his children, in whom an estate of inheritance was intended to be given, he uses the same expression.

Thus in the clause in which *Vickars' Venture* is given to *Elizabeth*, and to her heirs, (lawfully begotten,) if she die *without heirs*; what heirs? heirs lawfully begotten, *that is issue;* and an estate tail is created by those words.

As then the words *(lawfully begotten,)* confine the meaning of the word heirs in a will to *issue*, especially when there is a limitation over, and as the words *die without heirs, must,* in that clause of the will by which *Vickars'*

June 1820.    *Venture* is given to *Elizabeth*, mean issue, so *may* the
              same words *without heirs*, in that clause of the will, on
Pratt         which *Garron's* remainder depends, bear the same con-
vs.           struction, thereby give full force and efficacy to every part
Flamer.       of the will, and carry into full operation the manifest in-
              tention of the testator.

If then, on the death of *William Vickars*, the testator,
*Garron* had an interest in this property, and if he had any,
although in remainder, he was perfectly competent to dis-
pose of it by his last will—Has he by that will, given that
interest to one of the lessors of the plaintiff, so as to ena-
ble them to recover in the present action?

By the will of *Garron*, before set forth, he gave one half
of all his estate to his illegitimate daughter *Henrietta Palmer*,
of which there is no question, so far as her interest was
concerned, she took a clear fee simple.    The other half he
devised to "the child *Rebecca Palmer is now with*," and the
question is, whether an unborn illegitimate child, of which
the mother is pregnant at the time of the will, is capable
of taking by devise?

It is not questioned but that a legitimate child could
take; not so, it is contended, the illegitimate.

No express decision, *pro* or *con*, has been cited on this
subject, and from *Hargrave's* Notes it was a doubtful point
when he wrote.    In *Moore's* Reports the limitation to an
unborn illegitimate is said to be valid.    *Roll's Abridg-
ment* to the same effect.    In *Croke Eliz.* it is doubted
whether, on principles of policy, such dispositions should
be favoured.    The judges differed—one favourable to the
illegitimate, one opposed, and the other inclined to the se-
cond opinion, saying he had consulted most of the judges,
and a majority was against the illegitimate's claim.

In the case before the court, there is the utmost certain-
ty as to the intended devisee; she is described *as the child
of which Rebecca Palmer* was then with.    *Ann Pratt*, one
of the lessors of the plaintiff, is admitted to be that child,
and she is competent to take, except excluded from politi-
cal considerations, there being no uncertainty as to the
person.

Where can be the justice or policy in punishing the in-
nocent offspring for the criminal illegitimate intercourse be-
tween their parents? their situation is deplorable enough
without being deprived of the pecuniary aid of those who

brought them disgracefully into existence. It is difficult
to discover what principle of policy it is, that will enable
the father of illegitimate born children, to provide for those
that have lived long enough to acquire a reputed name,
that will exclude him from making provision for the child
that is unborn, and who, when it comes into existence, will
stand more in need of assistance. Yet it is clear that
provision can be made for the one, and doubtful as to the
other.

Let the policy of the *English* courts in the reign of *Elizabeth* have been what it might, it has long ceased to be
the policy of *Maryland* to have those children unprovided
for; on the contrary, the subsequent marriage of the parents, legitimates the prior born children, and if the father
is so unnatural, as to leave the child unprovided for, he can
be forced to his duty, and compelled to take care of his
offspring, although illegitimate. The devise then to the unborn child is, in the opinion of the court, valid. The remaining question is, whether on the death of her sister *Henrietta* without issue the whole went to the posthumous child?

On that subject the court have not the slightest doubt—
The will is, "that if *either* of the children *die without heir*,
then I give *their part to the other.*" We have seen that a
remainder over to a collateral heir, will convert the meaning of the word *heir*, to *issue;* because the first devisee
could not die without heir living, a collateral heir. The
converse is equally true, that where the limitation or remainder over is to take effect on the first devisee's *dying
without* heirs, if that devisee, on whose estate the remainder depends, is of that description as to be *incapable of having heirs other than issue*, (which is the predicament of an
illegitimate,) then it must follow, that by the word heir, issue or heir of the body only is intended; and therefore the
court are of opinion, that on the death of *Henrietta*, without issue, her sister was entitled to the whole estate.

The judgment then of the court below is reversed, and
judgment must be entered here for the appellant, the plaintiff below.

Chase, Ch. J. *(a).* In considering the will of *William
Vickars*, the apparent intention of the testator is to give

*(a)* This opinion of the Ch. J. was formed by him at the argument at a former term, and owing to indisposition he did not attend when the opinion of the court was delivered.

June 1820. the lands in question, *(Piccadilly* and part of *Dunn's Range,)* to *Sarah Vickars,* his wife, during her life, with cross re-mainders in tail to his daughter *Elizabeth,* and the child with which his wife was supposed to be enseint—Remain-der in fee to his brother *Jacob Garron.* This intention not being repugnant to any rule or principle of law, must pre-vail. The words "in case my children" *(Elizabeth,* and the child with which his wife was supposed to be ensient,) "die without heirs, I give and bequeath my aforesaid lands and negroes unto my brother *Jacob Garron,* to him and his heirs, for ever," coupled with the words in the pre-ceding clause, by which he devised the lands in question to the child *en ventre sa mere,* create, by necessary implica-tion, cross remainders in tail in *Elizabeth* and the child *en ventre sa mere.* This will must be construed in the same manner as if the child had been born; and dying with-out heirs, means heirs of the body, because *Elizabeth* could not die without heirs, living the child, nor the child die without heirs, living *Elizabeth.* The interest acquired by *Jacob Garron,* under the will of *William Vickars,* in the lands in question, was transmissible by the will of *Jacob Garron,* which brings me to the consideration of his will, and to decide what interest in the said lands passed thereby, to whom, and to what extent.

The true construction of this will, according to the ma-nifest intention of the testator, is to give the lands in question to his two illegitimate children, *Henrietta Pal-mer* and *Ann Palmer, (Ann* being the child with which *Rebecca Palmer* was enseint at the time of making the will,) as tenants in common, in tail, with cross remainders over in fee. Can this intention be effectuated without infringing any rule or principle of law? If it can be, such exposition ought to be given to it.

It is established law, that a child, *en ventre sa mere,* is capable of taking by devise, and that by operation of law the interest in the land so devised will vest in the child when born, and in the meantime descend to the heir at law. It is equally well established, that an illegitimate child, or bastard, can have no heir but children or issue of the body.

The first clause of the will standing alone, and without the limitation over, would have given *Henrietta Palmer* an estate in fee in an undivided half of the lands in question;

but taken together, and considered with the second clause, that estate is qualified and converted into a tenancy in common in tail, with cross remainders over in fee.

As a bastard can have no heir but issue of the body, I consider the words "if either of the children" (both being illegitimate,) "should die without heir," of the same import and meaning, in legal signification, as saying if either of the children should die without issue.

