# JANUARY TERM, 1858. 15

Sidney S. Hartshorne et al. *v.* Joseph S. Ross., adm'r, et al.

SIDNEY S. HARTSHORNE ET AL. *v.* JOSEPH S. ROSS, Administrator, etc., of WARREN HARTSHORNE, Deceased, ET AL.

## (No. 7,014.)

1. The testator's will is to be construed by the laws in force at the time of his decease.
2. A widow refusing or neglecting to take under her husband's will, is entitled to the same proportion of his personal estate as if he had died intestate.
3. When the husband dies without issue the wife takes all the personal estate, subject to distribution, as next of kin.

SPECIAL TERM.—Proceeding to obtain a judicial construction of the will of Warren Hartshorne, deceased. The plaintiffs claiming to be residuary legatees under the last will and testament of Warren Hartshorne, deceased, brought their original action against the defendants, Ross and wife, as administrators with the will annexed, of the estate of said deceased, for an account of the property which had come to their hands belonging to said estate, and for payment of the sum which might be found due to complainants, and to enforce the performance of the trusts created by said will.

It appears from the petition, answer, exhibits and testimony taken in the cause, that on the 29th day of January, 1848, Warren Hartshorne, then a resident of the County of Hamilton, State of Ohio, made his will therein, in all respects duly *executed* and *published*, according to the *act* then in force, as also the present law, by which he devised and bequeathed his estates as follows:

1st. "To my dearly beloved wife, Ann, *in lieu of her dower*, I will and bequeath the one half of all my property, both real and personal, that shall remain after paying out all the legacies and bequests hereinafter named, and bequeathed by me in *items*, 2d, 3d, 4th, 5th, and 6th, of this my last will, etc., to have and to hold the same during her *natural life*, and at the death of my said wife, the real estate aforesaid, and such part of the personal property, or the

proceeds thereof, as may then remain unconsumed and unexpended, I will and bequeath to my brothers and sister, Daniel and Ebenezer Hartshorne, and Esther Fuller, to be equally divided between them, share and share alike; and in case of the death of either of my said brothers or sister, then the said share of the deceased to go to the lawful heirs of said deceased."

Item 2d gives for benevolent and pious uses to certain Bible, education, tract, missionary and other benevolent and religious societies, *one hundred dollars each*, " to be paid out of the *first* moneys collected out of my estate, after my decease."

Item 3d.   ......

Item 4th. " I will and bequeath to my step-daughter, Jane Douglass Anderson, $1,000."

Item 5th.   " To my namesake, Warren Hartshorne, son of my nephew, Sidney Hartshorne, $500," etc.

Item 6th. " To each of my half-brothers, Jonas and Calvin Hartshorne, and Susan Kendall, and Sarah G. Pateridge, $500 "—amounting in the aggregate to $4,200.

Item 7th. "All the remainder of my property, I will and bequeath to my brothers and sister, *Daniel* and Ebenezer Hartshorne, and Esther Fuller, to be equally divided between them."

Item 8th. " The house and lot which I now own in Walpole, (Mass.,) in which my sister Esther now lives is to be part of her portion, valued at $800, and is not to be sold during her life; but to go to her heirs."

The will then provides for the payment of debts, before any division shall be made, or legacies paid, and appoints the testator's beloved wife, Ann Hartshorne, executrix, etc.

That on the thirteenth day of January, 1855, the testator made a codicil to his will, duly signed and sealed by him, attested by three witnesses, and published and declared to be, the *first codicil* to the testator's last will and testament, by which to " avoid misunderstanding, there being improvements made by me on the lot in which I now reside, in Clermont county, Ohio, (deeded to my wife, etc.,) I bequeath

Sidney S. Hartshorne et al. *v.* Joseph S. Ross, adm'r, et al.

to her, all the houses and improvements, etc., made by me on the said lot, etc. ; also to my dear wife and her heirs, forever, all the furniture in said dwelling, etc., all fuel and provisions, all my horses and harness, etc., and all my pleasure carriages, stock, farming and other utensils, etc., upon the premises, to have in addition to my bequests to her in my last will and testament, made in 1848."

The testator died on the 10th day of March, 1855, *without issue,* leaving his wife, *Ann,* surviving, who caused the will to be admitted to probate and record in Hamilton county, on the 4th of May, 1855, and took out letters testamentary thereon. Afterward, and within a year from such probate, the widow appeared before the probate judge, renounced the provisions made for her under the will, and elected to take such provision as was made for her *by law* instead thereof.

As executrix, the widow caused an inventory and appraisement to be made of the personal estate of the deceased, from which it appeared that the personal estate situate upon the premises, in Clermont county, and which had been bequeathed to the widow, was of the value of $1,024, and the other personal property of the value of $38,095.96, all of which came to her hands as executrix, in all $39,120.58.

That on the 14th November, 1856, the widow intermarried with the defendant, Joseph S. Ross, who was subsequently duly appointed administrator *de bonis non,* etc., and filed an inventory of the property which came to his hands as such. Ebenezer Hartshorne, and Daniel Hartshorne, (who with Esther Fuller are named as residuary legatees in the 7th item of said will) died before suit brought, leaving as their heirs and representatives, the co-plaintiffs of said Esther and husband, who united in the action to demand an account from the defendants, Ross and wife, of their proceedings, as administrator and executrix aforesaid, and for settlement of the trust, claiming that the debts of the estate were substantially paid off. The defendants, by their answer denied that plaintiffs were entitled to any account of said personal estate, or that the plaintiffs had any interest therein,

2

averring that by reason of the widow's declining to take under the will, she was entitled by law to the *whole* of such personal estate, after payment of debts, as though the testator had died *intestate.*

*Edward Woodruff & M. H. Tilden,* for plaintiff.

*Groesbeck & Thompson,* for defendants.

STORER, J.   The plaintiffs are the brothers and sisters, or their representatives, of the testator.   The defendants are the administrator with the will annexed, the testator's widow, and other devisees under the will not named as plaintiffs.

On the 29th January, 1848, the testator made and published his will, which is in due form, devising to his wife, in lieu of her dower, one-half of all his property, real and personal, that should remain after the payment of certain legacies and bequests, " to be held, used and enjoyed by her during her life."   The residue of his estate, real and personal, was devised to the plaintiffs.   On the 13th of January, 1855, the testator added a codicil, by which, having referred with approbation to his former will, he gave to his wife, in addition to his previous bequest, all the improvements he had made upon her separate real estate, where they then resided, together with all his household furniture and farming utensils, to hold as her own property, in absolute ownership. The testator died without issue, on March 10, 1855.   His will was admitted to probate in May following, when his widow was qualified as sole executrix, and letters testamentary were granted to her.   She gave bond accordingly, and entered upon her duties as executrix.

It is alleged in the petition, and admitted in the answers, that the widow declined to take under the will within the time prescribed by law, and that she was remitted to her rights under the statute, which are alleged to be her dower, and such share of the personal property as she would be entitled to had her husband died intestate.

Mrs. Hartshorne, in November, 1856, intermarried with Joseph S. Ross, when the executorship ceased, and her present

husband was appointed administrator *de bonis non*, with the will annexed.

The petition and answer present the single question, what is the widow's share of the testator's personal estate; the whole amount of the personalty being about $40,000.

We must first inquire, when did the will take effect; and upon this point, we suppose there can be no difference of opinion, as there certainly is no exception in the books as to what is the true rule. "The making of a will is but the inception of it, and it doth not take any effect till the death of the devisor." 4 Rep. 61, *Forse and Hembling's case*. "And, for this reason, a man may alter or make void his will at his pleasure, and he may make as many new wills and testaments as he pleases, and there is no way to bar a man of this liberty." 7 Bacon's Abridgement, 340, Title E.

The whole current of authority is but the affirmation of the principle thus stated. It is found in all the elementary treatises, and the reported cases are but a commentary upon it, without addition or limitation.

When the testator died, the wills act of 1852 was, and still is, in force. By section 1, "any person of full age and sound memory, having an interest in lands, tenements, or hereditaments, or any other property, of any description whatever, may give and devise the same to any person, by last will and testament, lawfully executed, subject, never-theless, to the rights of creditors, and to the provisions of this act, and of an act entitled an act to restrain the entailment of real estate." Section 44 provides that "the election of the widow to take under the will, shall be made by her in person in the probate court, except as hereinafter provided; and on her application to take under the will, it shall be the duty of the court to explain to her the provisions of the will, her rights under it, and by law, in the event of her refusal to take under the will; the election of the widow to take under the will shall be entered upon the minutes of the court; and if the widow fail to make it, she shall retain her dower and such share of the personal estate of her husband.

as she would be entitled to by law, in case her husband had died intestate."

The law of March 23, 1840, Swan 365, " to provide for the settlement of the estates of deceased persons," was, when the testator died, and still is in force. By section 175, " when the intestate shall not have left any legitimate child, heir of his body, the widow shall be entitled to all the personal estate, as next of kin, which shall be subject to distribution upon settlement of the estate ; and if the intestate shall have left such child, the widow shall be entitled, upon distribution, to one-half of any sum not exceeding four hundred dollars, and to one-third of the residue of the personal estate subject to distribution."

On the provisions of these acts the widow and her present husband rely to establish her right to all the personal estate of the testator subject to distribution. The plaintiffs resist her claim, and insist she is only entitled to such share as shall remain after the debts, devises and legacies have been paid, thereby assuming that the rule of the common law must guide us in giving our construction to these statutes. To sustain this assumption, a very thorough examination of the various laws relating to wills, descents and intestacy, that have, from time to time, been in force in Ohio, has been made, and their provisions compared as parts of a uniform system of legislation.

It is argued that when the testator made his will, the act of 1840, with its several amendments, was in force, and, as section 46 of that act is substantially the same as section 44 of the present statute, the same construction should be given to both. The true construction, it is claimed, was given to the former law by the declaratory act of March 7, 1842, which recites, that, " whereas doubts have arisen under section 46, of the act relating to wills, whether, where a widow fails to elect to take under a will, in lieu of dower, she shall be entitled to share in the personal estate, to the exclusion of legatees, or only a share in such of the personal estate as remains unbequeathed ; and, whereas, it is proper

that such doubts be removed, therefore, it is enacted that nothing in said section contained shall be so construed as to vest in the widow personal estate that is lawfully bequeathed by her husband to other persons; but in all such cases, in which the widow fails to make election, as is provided in said act and section, she shall retain her dower in his real estate, and her distributive share in the personal estate not disposed of by the will." Ohio Laws, vol. 40, p. 55.

The rule thus established virtually enabled the husband to dispose of his whole personal property without reference to any prior claim of his wife, and, if he thought fit, to leave her without a shilling. At their next session, in 1843, the legislature repealed the declaratory act, and, in express terms, revived section 46 of the law of 1840. No further legislation was had until February, 1846, when another amendment was passed, O. L. 44, p. 79, which provided, "if the widow shall fail to make her election ; or, if no provision be made for her in the will, she shall have her dower, and such share of her husband's personal estate as she would be entitled to by law in case her husband had died intestate, leaving children ;" her share, in that event being one-half of the first four hundred dollars, and one-third of the residue of the whole personalty subject to distribution ; and this is still the rule, when the husband has left issue.

When the testator died, the wills act then existing repealed all prior laws on the same subject, saving, however, by section 79, "all rights that had accrued" under them, or either of them, which saving, it is claimed, includes the rights of these plaintiffs, as devisees, thereby referring the operation of the will to its execution, instead of the time of the testator's death.

We suppose the term, "accrued," is equivalent, in its meaning, to the word "vested," which necessarily implies that something .has been imparted to, or conferred upon a third person, over which he may have the immediate control by possession, or the present right to future possession, of which he can not be deprived without his assent. It must

be a right he can legally assert, independent of any future condition of things, as well as any subsequent change of the existing law.

For many purposes, a will is inchoate, though not consummate, from its execution.   Mr. Jarman, in the 10th chapter of his work on " wills," under the significant title, "From what Period a Will Speaks," has discussed with much minuteness, and illustrated the principle of the exception to the general rule.   He tells us it is applied to ascertain the classes of persons then in being, and thus ascertain the meaning of the testator as to the object of his bounty, to learn the meaning of provincial terms then in common use, the names of children, and the condition of the property devised, and its boundaries.   Until the statute of 1 Victoria, chapter 26, which declared that " every will shall be construed, with reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention should appear by the will itself," the English courts always held that real property, subsequently acquired, did not pass by a prior will, unless there was a republication; the testator's intention being referred to the condition of his estate at the time he made the devise, and not at the time of his death.

To this rule, the cases quoted by the plaintiff's counsel may all be referred.   15 Connecticut, 274, *Brewster* v. *McCall;* 9 Johnson, 312, *Jackson* v. *Potter et al.;*   20 Wendell, 457, *Van Kleeck* v. *Dutch Church;*  4 Maryland, 335, *Magruder et al.* v. *Carroll et al.;* 5 Maryland, 471, *Alexander* v. *Worthington;* 9 Iredell, 288, *Battle* v. *Speight.*

But, it is claimed, that a collocation of the wills act, with the law relating to executors and administrators, and the statute of distribution, when construed in "*pari materia*," as parts of the same system, will authorize the implication that it was intended the widow should take the share she would have inherited had her husband died intestate, if she should refuse to take under his will; on the other hand, it is asserted

that so much of the testator's property as he has devised, is withdrawn from the statute of distributions; else, if he died childless, no bequest he may have made to a relation or for a benevolent object, could avail to the legatees. This argument places the question on the strongest ground that can be taken to sustain the proposition assumed, and, unless it can be satisfactorily disposed of, must produce very great doubt upon the general question.

The wills act, we have already said, is clear in its terms. We find no ambiguity in any one of the sections to which our attention has been directed. While it permits a testator to devise his property as he pleases, the power, moreover, is subject to the provisions of the act itself; and while it saves all rights accrued under prior statutes, those rights must have vested by the death of the testator, whose will had not yet been probated. The law relating to administrators and executors is alike plain and simple: though section 175 expressly makes the widow next of kin to her husband, should he die intestate, without children, and permits her to inherit accordingly.

It is very ingeniously argued that some of the sections of the statute of descents and distributions are in conflict with previous enactments, and can not be reconciled, unless the construction claimed by the plaintiffs is admitted. The act of 1853 upon this subject does not differ from that of 1831, and the amended statute of 1835, which were in force when the will was made. By section 4 it is declared, " if any person shall die intestate leaving any goods, chattels, or other personal estate, they shall be distributed as is pre scribed in section 2, saving, however, to the widow such right as she may have to any portion thereof." The language of the last section is, " if there be no children, or their legal representatives, the estate shall pass to, or be vested in the husband or wife, relict of such intestate, during his or her natural life." If we compare these clauses, we are not satisfied that section 45 of the wills act is to be modified or limited in its operation in any other manner than the words

used would naturally import.   In section 2 we find the line of descent is given, and a life estate saved to the husband or wife, as either may survive the other; and, although section 4 refers to it to regulate the division of the personal estate, it is expressly qualified by reserving to the widow all her rights.   We must look, then, to the law " relating to executors and administrators," to ascertain what those rights were.   A portion of the husband's estate, we find, is not to be inventoried, as it does not pass to his representatives in distribution, such as household furniture, wearing apparel, and a suitable allowance to the wife; and the residue is disposed of by section 175, already alluded to.

We can not discover any discrepancy in the foregoing acts, whether we consider them separately or in conjunction —in their letter or spirit—nor is there, in our apprehension, any difficulty in giving to each their appropriate meaning, without doing violence to either.   If we should admit the construction of the plaintiffs' counsel to be correct, that all personal property devised is " *ipso facto* " withdrawn from distribution, and thereby defeats the widow's claim, we must decide the husband may disinherit his wife, and prevent the operation of the law that makes her his next of kin; and may it not follow that, as the wife's right to dower is equally the creature of the law with her right to a share of the personal property, if the husband can repudiate the one, he may, in like manner, destroy the other, for there does not seem to be any distinction between them by sections 44 and 45 of the wills act.

There can be no difficulty, we think, in arriving at the conclusion that it is the intention of the statute to provide for the widow, at all events, from her husband's estate; to allot to her a certain portion of his personalty, in addition to her ordinary interest in the realty, that is not to be affected by any disposition he may make by his will.   If he die intestate, there is manifest propriety that she should receive a liberal allowance; and should he devise his estate, without providing as generously for his widow as did the

statutes, she should have the option to abide by the will or take her portion at law.    The election to receive less than her legal allowance should be hers.    The husband ought not to impose it upon her; and, therefore, it is that, before any election is made, the probate judge is required to explain to her "the provisions of the will and her rights under it, as well as at law."    As if to place the intention of the legislature beyond doubt, section 46 of the wills act makes it the further duty of the judge, in case "the widow is unable to make her election, from insanity or imbecility of mind, to appoint some suitable person to ascertain the value of the provision made for her by will, in lieu of the provisions made by law, and the value of her rights, by law, in the estate of her husband; and if, on the report of the facts, it is found that the devise is more valuable than her legal allowance, the court may make an election for her."

The husband executes his will, subject to the law in force when it shall take effect, and, therefore, his devisees, can not complain.    He might have cut off his heirs without any token of remembrance.    Not so with his wife; her right is paramount; it depends not upon his kindness, much less his caprices.    The history of the legislation of our State is but a commentary upon the policy that public sentiment has hitherto vindicated in its largest expression.    If we refer to the ordinance of 1787, the laws of 1795, 1805, 1808, 1810, 1816, 1824 and 1831, we find the widow is allowed, at one period one-third, at another, one-half, and, at another, the whole of the husband's personal estate subject to distribution, if he died intestate; though it is not until the statute of 1840 that the provision is introduced, securing, under all circumstances, her rights at law; and this hitherto unknown provision indicates very clearly that if the widow was not protected by prior statutes, thereafter there should be no doubt what her rights really were, and how they should be protected.    Whether her husband died testate or intestate, the rule was now established, that if he

left no children, she should succeed to his whole personal estate subject to distribution, as next of kin.

It is said that this construction endows the widow at the expense of those more worthily entitled to legal favor. It is not our province to vindicate the motives of those who framed this series of statutes; sufficient it is if we ascertain their intention to be clear. But if it were necessary to do so, we think the relation she sustains to her husband is equally, if not more favorably, to be regarded than that of collateral heirs—persons who are not in the line of immediate descent, having no inheritable blood as such, perhaps never in sympathy with the decedent, or even known to him personally; and it is well said by the court, in *Darrah et al.* v. *McNair*, 1 Ashmead, 238: "In a country like this, where, in most instances, the estate of the husband is the result of the mutual industry of the husband and the wife, she would naturally be an object of primary consideration, and the effect of any law which would estimate her rights as inferior to the collateral relatives of her husband, could hardly be supposed to be so intended by the legislature."

Ohio is not alone in her legislation upon this important and interesting subject.

There has been a similar statute in Kentucky. It is a part of the earliest legislation of that State, dating back to 1797, see 1 Littell's Laws, 617, to which the court of errors, 7 B. Mon. 112, *Tibbs* v. *Tibbs' Ex.*, has given the same construction as we have given to our own. So, also, in Virginia, 6 Call. 101, *Bernard* v. *Hipkins*, and 8 Leigh, 400, *Kinnaird* v. *Williams*, under the statutes of descents of 1792.

We are not, then, required to give an unnatural or forced construction to the laws which compose our present system of descent and distribution, including the wills act, when we take their literal meaning as our guide. We may well suppose it was the desire of those who framed them that they should be understood in the ordinary sense of the plain and simple language in which they were written. They were enacted to furnish a rule upon which all might rely

who sustained the relation of husband and wife, ancestor and heir, however imperfect may have been their legal knowledge; more than all, to save the widow from the unkindness or perversity of her husband, as well as the neglect of heirs, not of his body, and allied to her by no ties of blood.

In the case before us, had we not been convinced that the will must take effect under the law in force when the testator died, and not at the time he made it, we might yet have been spared the discussion of the question, as the present statute was passed before the testator made his codicil. This act, which recognizes and reaffirms the original will, is a republication of it to every legal intent, and brings the will within the operation of the law of 1852. 6 Johnson Ch'y, 375, *Mooers* v. *White*; 14 Pickering, 534, *Haven* v. *Foster*.

" It has been long settled," says Mr. Williams, in his profound work " On the Law of Executors and Administrators," " that the republication of a will is tantamount to the making of that will *de novo*; it brings down the will to the date of the republishing, and makes it speak, as it were, at that time." "In short, the will so republished, is a new will." 1 Williams, 119, ch. 4, sec. 2.

We conclude, therefore, that Mrs. Ross is entitled to all the personal estate of the testator subject to distribution; that it vests in her as next of kin, and her husband could not, by any devise in his will, deprive her of the full share given her by law, if he had died intestate.

The questions raised, how the bequests to charitable purposes are to be paid if the whole personal estate is decreed to the widow, and upon what description of property they are to be charged, we do not think are involved in this litigation, except so far as to exclude them from any claim upon the personalty. If the widow's rights can not be impaired by the husband's will, the legacies he may have bequeathed, so far as they affect the personalty, must depend upon the generosity of the wife to requite the testator's benevolent intention. Whether they can be charged upon

the realty we need not decide, as the point is not before us and could not arise in this controversy.

A decree will be, therefore, entered in accordance with the principles we have indicated.