(Decided 17th July, 1879.)

---

JOHN C. ESTEP and MARGARET P. SHAW *vs.* WILLIAM D. MACKEY, ELLA C. SHAW, and others.

*Art. 5, sec. 29, of the Code as affecting a question of Jurisdiction, on Appeal—Construction of Will made before the Act of 1862, ch. 161—Executory devise—A limitation over, after a Devise to Illegitimate children, on their Dying without heirs, held to be void.*

Art. 5, sec. 29, of the Code, precludes this Court from entertaining the question as to the sufficiency of the averments of the bill to give the Court jurisdiction, where the record does not show that the question was raised in the Court below.

The will of a testator contained the following clause : " Item second, I give and bequeath to my following named illegitimate sons by M. E. C. as follows : to H. C. C., A. C., and J. C., all my real and personal property to be equally divided among them, after reserving property enough to rent or hire yearly for the sum of one hundred and fifty dollars, for the support of M. E. C. during her life-time, or so long as she lives a life of a virtuous woman, and all my just debts are paid. I also make this provision in my will, that in case one or more, or all of the above named children should die before

Estep and Shaw *vs.* Mackey, *et al.*

deceased shall arrive at the age of maturity, or after they have arrived at the age of maturity, and die without issue or lawful heirs, the property, both real and personal, belonging to the deceased one, to be equally divided among the other two surviving children; and in case that one more should die before he arrived of age, or without issue or lawful heirs, the surviving child to have all of the two deceased ones property, both real and personal; and I furthermore provide, that if all the children named in this will shall die without heirs, then the property contained in this will, I devise and bequeath to the heirs of John C. Estep, and the heirs of Margaret P. Shaw, to be equally divided among them, share and share alike." The will was dated the 6th day of August, 1861, and was admitted to probate on the 13th day of April, 1864. HELD:

1st. That the will must be construed without the help of the Act of 1862, ch. 161. The terms and expressions used in it must be understood in the sense which long usage and the decision of Courts had attached to them; and they could not be understood in a different sense which a statute had ascribed to them since the will was made.

2nd. That H. C. C., an illegitimate son of the testator who was alive at the time the will was made, having afterwards died, and another illegitimate son of the same name having been afterwards born, the latter could not claim directly under the will by virtue of the devise therein to H. C. C.

3rd. That the words used by the testator showed his intention to give each of his sons named in the will a fee, defeasible in *some* contingency; and the limitation over upon the happening of the contingency, was only good, if at all, as an executory devise.

4th. That the provisions of the Act of 1825, ch. 156, having changed the status of illegitimate children as to inheritable blood, "dying without issue," can no longer be restricted in their case to dying without heirs of the body, but must be construed when used respecting them precisely as if used with reference to persons born in wedlock.

5th. That the words "die without issue" or "without heirs," must be regarded as used in this will in their technical sense, there being no other words used to qualify their meaning.

6th. That the contingency upon which the limitation over was made to depend being an indefinite failure of heirs, the devise over was void, and the estate of the first taker became absolute.

Estep and Shaw *vs.* Mackey, *et al.*

7th. That H. C. C. was entitled to the real estate, he being the son of the testator and of the said M. E. C., and only heir-at-law of the survivor of the three devisees, his brothers.

APPEAL from the Circuit Court for Prince George's County, in Equity.

By the will of Joshua T. Estep, dated the 6th day of August, 1861, the testator gave his property, real and personal, to Henry Clay Cross, Arthur Cross, and Julian Cross, his illegitimate children by Mary Emily Cross, to be equally divided among them; and in the event of their dying without heirs, he gave the same to the heirs of John C. Estep and the heirs of Margaret P. Shaw, to be equally divided among them, share and share alike. The terms of the will are stated in the opinion of the Court.

Henry Clay Cross died without issue in the life-time of the testator, and another son of the testator by said Mary Emily Cross was afterwards born, who was also named Henry Clay Cross. Arthur Cross and Julian Cross having also died without issue, the bill in this case was filed by John C. Estep and Margaret P. Shaw, against the children of the former, and the child and grand-children of the latter, together with the husband of her deceased child, alleging that they were the brother and sister of the testator and his only heirs at law, and as such were entitled to certain real estate of which the testator died seized, and asking a construction of the said will. Henry Clay Cross the second, was made a defendant by an amended bill, and claimed that he was entitled to the property as the heir of his deceased brothers.

The Court below (MAGRUDER, J.,) passed a decree dismissing the bill, and the complainants appealed.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, MILLER and IRVING, J.

*I. Parker Veazey,* for the appellant, Mrs. Margaret P. Shaw.

*Richard B. B. Chew,* for the appellant, John C. Estep.

*Frank H. Stockett,* for the appellee, Henry Clay Cross.

IRVING, J., delivered the opinion of the Court.

This appeal brings up for our construction the will of Joshua T. Estep, which was dated the 6th day of August, 1861, and which was admitted to probate on the 13th day of April, 1864. That part of the will, which we are called upon to interpret, reads as follows : "Item 2nd, I give and bequeath to my following named illegitimate sons by Mary Emily Cross, as follows: to Henry Clay Cross, Arthur Cross and Julian Cross, all my real and personal property, to be equally divided among them, after reserving property enough to rent or hire yearly for the sum of one hundred and fifty dollars, for the support of Mary Emily Cross during her life-time, or so long as she lives a life of a virtuous woman, and all my just debts are paid. I also make this provision in my will, that in case one, or more, or all of the above named children should die before deceased shall arrive at the age of maturity, or after they have arrived at the age of maturity, and die without issue or lawful heirs, the property, both real and personal, belonging to the deceased one to be equally divided among the other two surviving children ; and in case that one more should die before he arrived of age, or without issue or lawful heirs, the surviving child to have all of the two deceased ones property, both real and personal; and I furthermore provide, that if all of the children named in this will should die without heirs, then the property contained in this will I devise and bequeath to the heirs of John C. Estep, and the heirs of Margaret P. Shaw, to be equally divided among them, share and share alike." The next and last clause of the will appoints an executor and a guardian for his said children.

It is not necessary for us to consider the question, raised in argument, whether the averments of the bill are suffi-

cient to give the Court below jurisdiction of the case. The record does not show that any such question was raised in the Circuit Court, so that " we are precluded " from entertaining that question " by the very stringent language of section 27, Art. 5, of the Code," and by several decisions of this Court thereon. *Gough vs. Manning,* 26 *Md.,* and *Ashton vs. Ashton,* 35 *Md.,* 502.

The will before us must be construed without the help of the Act of 1862, ch. 161, which has been invoked in its aid by the appellants. The case of *Magruder & Tuck, Ex'rs vs. Carroll,* 4 *Md.,* 335, so strongly relied on by counsel to establish the right to construe this will by the provisions of that Act, which was passed after the will was made, so far from sustaining that proposition, is adverse to it. In that case the Court was considering the effect of the Act of 1849, ch. 229, on wills made before its passage, and the Court puts its decision expressly upon the presence of the second section in the Act, which provided for its retroactive effect upon wills made before its passage, where the makers thereof should not die before the first day of June, 1850. In the opinion, Judge LeGRAND says, " if the Act were constituted of the first section, we would not experience any difficulty in deciding that it was intended, and did in fact operate only on wills executed after the first day of June, 1850." In *Johns vs. Hodges,* 33 *Md.,* 521, the same question was before the Court, after the Code had been adopted, wherein the second section of the Act of 1849 was omitted ; and the Court decided, that with the repeal of the second section, which the Code had effected, by its omission, its retroactive effect was destroyed and it must be held to operate only on wills made subsequent to it. The Court there says " the will, having been executed before it, is beyond its reach, and must be governed by the law as it existed when it was made." The reason for such a decision is substantial. The testator is presumed to know the law as it exists, and to have made

his will, and used language in making it, with due regard and reference to the existing law.   The terms and expressions used in this will, therefore, must be understood in the sense which long usage and the decision of Courts had attached to them; and they cannot be understood in a different sense which a statute has ascribed to them since the will was made.   The appellants in this case are brother and sister of the testator, and claim by their bill that by the will he gave the first takers only a life estate; that the limitation over to the heirs of the complainants is void, because of the established rule that "*nemo est hœres viventis;*" and that the limitation over failing, he has died intestate of the fee, and they as his heirs-at-law are entitled.   The only party defendant making defence is Henry Clay Cross, who defends upon two grounds, viz: first, that a fee was given to the devisees, his three brothers, and he is the heir-at-law of the survivor of them; and, secondly, that if that be not so, he by name fills the description of the devisee, Henry Clay Cross, named in the will, and takes accordingly.   It is both conceded and proved that a son, called Henry Clay Cross, was living when the will was made, and who was clearly intended, and died in the life-time of the testator and before this appellee was born.   So that notwithstanding he bears the same name, and is a son of the testator, as was the other, the fact that he was born after the will was made, and after the death of the other Henry Clay Cross, his brother, resolves the ambiguity, supposed to exist, adversely to his claim directly under the will.   He was not in being and could not have been intended.   If he has any right to the property mentioned in the will, it must be by virtue of being the heir at law of a brother or brothers, who took an inheritable estate under the will.   We come then to the main question, what estate the three sons of the testator took under this will; and whether there has been any effectual limitation over of the estate devised to them.   To

ascertain the intent of the testator, from an examination of the whole will, and careful comparison of all its provisions, and to give effect to that intention, as far as is consistent with the established rules of interpretation and law, is our duty.

The intent, however, must clearly appear from the language used in the various parts of the will; and unless the intent is clearly and certainly different from that which the technical language he has used may import, we must adhere to their technical signification, and give effect to the will accordingly. The first object the testator, in this case, had in view, was suitable provision for his three sons named in the will. The general intent manifestly was to give his estate to them, in equal proportions, and the issue of each was to succeed to the father's estate. If either died "without issue or lawful heirs," the survivors or survivor, as the case might be, was to take the whole. In this expression, " that in case one or more, or *all* of the above named children should die before deceased should arrive at maturity, or after they have arrived at the age of maturity," and die " without issue or lawful heirs, the property both real and personal, belonging to the deceased one to be equally divided among the other two surviving children," the word *all*, on which so much stress has been laid in argument, can mean nothing more than the word "any." In the connection in which it is used, and with reference to the provision which the testator was then making, the testator has bunglingly said that he means the qualification he is imposing to apply to every one of them, as respects the devolution of the estate on the survivors in the contingency named. It is very certain from the language used what object the testator had in view. He intended to give more than a bare life estate. If the word issue meant children *only* in that connection, he would not have added, by way of more clearly defining his

meaning the words "or lawful heirs." If by the terms "issue or lawful heirs," the testator meant "heirs of the body," and intended so to confine the devise, the language would have created an estate tail general, which the statute would convert into a fee. The testator, then, as we read the will, gave each of his sons a fee defeasible in *some* contingency, and whether that contingency has been declared with such precision and distinctness as to enable us with absolute certainty to carry out what was in the testator's mind is very doubtful. We may not guess what he intended, but in the absence of the clearest expression of intent in the will, it must receive just such interpretation as the language used legally imports. In the sentence by which the estate is given to the sons, no words of perpetuity are used, but in the next sentence words are used which, *without* the aid of the Act of 1825, might be held as giving by necessary implication a larger estate than a life estate; and under the operation of the Act of 1825, which is section 305 of Art. 93 of the Code, there can remain no doubt that the sons took a fee; for there are no words, in the will, which indicate that the testator intended to give only a life estate. The limitation over, whether effectual or ineffectual, to carry out the testator's purpose, creates no doubt as to the testator's design to give them either an estate in fee, defeasible on the contingency named happening, or an estate tail general, with a limitation over; and it would make no difference which, for the Act of Assembly converts the estate tail into a fee, and the limitation over in either case is only good, if at all, as an executory devise. Prior to the Act of 1825, ch. 156, which gives to the Code, section 30 of Article 47, a limitation over in the event of an illegitimate devisee "dying without heirs" was held to import not an indefinite failure of heirs, but a failure of heirs of his body at death; because, the Court said, *he* could have no other heirs; and the testator could only have intended such

heirs as the law allowed the person to have. *Pratt vs. Flamer,* 5 *H. & J.,* 10. Since that decision, the statute has made them capable of inheriting from each other, and the descendants of each other, and from their mother; and by a statute still later (and since this will was made) the mother and her heirs-at-law are made their possible heirs. The provisions of the Act of 1825 having changed their status as respects inheritable blood, "dying without heirs" can no longer be restricted in their case to dying without heirs of the body, but must be construed, when used respecting them, precisely as if used with reference to persons born in wedlock.

Dying "without issue" or "without heirs," by a long list of cases in this State, beginning with *Davidge vs. Chaney,* 4 *H. & McH.,* 393, and ending with *James vs. Rowland,* page 462 of this volume, when applied to real estate, have uniformly been held to mean an indefinite failure of issue or heirs, unless there were other words or provisions in the will which enabled the Court to see with reasonable certainty that the testator did not so mean. The absence of such language to qualify that expression, so that we can limit it, without doubt as to what the testator meant, compels us to give these words in this will their technical signification. When the testator was making a limitation over as between the children (his devisees) to the survivor of them in the contingency named, he uses terms which may very naturally be understood, under the circumstances, to mean heirs of the body; but when he comes to make a limitation over to collaterals, when the last of the sons should die, he uses very different language to designate the contingency he had in his mind. He does not say now "without issue or lawful heirs," but "without heirs," which in legal contemplation means a very different thing; and it is to be observed that in designating the contingency he intended to provide for, and in describing the contingent devisees he used the same term "heirs,"

Estep and Shaw *vs.* Mackey, *et al.*

which by all authority means heirs general, unless there be something in the context to control it and restrict it. We can find nothing in the context to justify us in departing from the ordinary meaning which is given it. If there were anything in the will (the slightest expression) to show that the testator in that will recognized his brother and sister as then living, then with some reason the word "heirs," in the description of the persons he intended to take in the event he was providing for, might be held to mean *children*, and as indicating that the testator intended to exclude from his bounty his brother and sister in favor of their children. And having by that means obtained a meaning for the word "heirs" there, it might be held as used in the same sense in that part of the sentence which names the contingency upon which his brothers and sisters were to take. There is no such expression in this will to help us to a different meaning from that which the words legally import.

The contingency, upon which the limitation over is made to depend, being an indefinite failure of heirs, the devise over is void. This being so, the estate of the first takers becomes absolute; and the appellee, Henry Clay Cross, being admitted to be the son of the testator and the said Mary Emily Cross, and only heir-at-law of the survivor of the three devisees, his brothers, is entitled to the real estate. The decree of the Circuit Court for Prince George's County, dismissing the bill, will be affirmed.

*Decree affirmed, with costs.*

(Decided 14th November, 1879.)