DONALD ZIMMERMAN et al. *v.* JOHN W. THOMAS
ET AL., EXECUTORS.

*Adoption—What Constitutes.*

There can be no adoption establishing the legal relation of
parent and child except under and in accordance with a statute.
p. 265

Acts 1880, ch. 64, authorizing the Nursery and Child's Hos-
pital of Baltimore City to bind out as apprentices, or to place
out "for adoption," children committed to its care, for a term
not exceeding the age of twenty-one, and an indenture made
under authority thereof, by which the hospital placed a child
with a man and his wife "for the purpose of adoption by them,"
until she arrived at the age of eighteen, they undertaking to care
for and educate her, and the institution retaining the right to
reclaim her if necessary, did not make her a child of such man
and wife, for the purpose of taking under a legacy to their chil-
dren and grandchildren.                    pp. 265-268

*Decided January 28th, 1927.*

Appeal from the Orphans' Court of Frederick County.

Petition by Donald Zimmerman and others against John
W. Thomas and Jessie Lee Diller Thomas, executors of the
will of Samuel Cornelius Thomas, deceased, for a distribu-
tion to petitioners of a portion of the estate of said deceased.
From an order denying the petition, petitioners appeal. Af-
firmed.

The cause was argued before BOND, C. J., URNER, ADKINS,
OFFUTT, DIGGES, and PARKE, JJ.

*Leslie N. Coblentz* and *J. Stanislaus Cook,* with whom
was *Charles W. Heuisler* on the brief, for the appellants.

*John S. Newman* and *Parsons Newman,* for the appellees.

BOND, C. J., delivered the opinion of the Court.

The question presented on this appeal is whether, upon facts shown, Daisy Lee Roberts, afterwards the wife of Walter C. Zimmerman and mother of the appellants, acquired by adoption in her lifetime the position and rights of a child of Cephas M. Thomas, within the purview of a legacy in the will of his brother Samuel C. Thomas to any children of a child of Cephas M. Thomas, in the event of the death of Cephas M. Thomas and such child prior to the death of the testator. After a legacy of one-sixth part of the estate to Cephas M. Thomas, and other legacies, the will contained a general provision that, "in the event of the death, prior to my decease, of any of the legatees or devisees herein named or pointed out, then and in that case the children of such deceased legatee or devisee shall stand in the place of the deceased parent and take such share or portion as said parent would have taken but for such death; and in event any of said children are deceased, then the children of such child shall take the parent's share." Cephas M. Thomas and the mother of the appellants did both die prior to the death of the testator, Cephas M. Thomas in 1920, the mother of appellants in 1913, and the testator in 1924. The orphans' court, from whose order the appeal is taken, denied the petition of the appellants to have the amount of the legacy distributed to them.

On October 28th, 1879, the Nursery and Child's Hospital of Baltimore City agreed in writing with Cephas M. Thomas and wife that, as soon as it was enabled by law to bind out children committed to its care, it would execute a deed of indenture binding out and committing Daisy Lee Roberts, then four years and six months old, over to Thomas and wife "for adoption," to be reared and maintained by them "so long as she shall remain in their custody," they to "adopt and treat her as if she was their own legitimate offspring"; and on March 30th, 1880, after the passage of the enabling act, executed the indenture accordingly. The enabling act (1880, chapter 64), was entitled "An act to authorize the Nursery and Child's Hospital of Baltimore City to bind out and con-

trol the destitute children under its care." And it provided that any children committed to the care of the hospital by parents or guardians or others might, at or before the age of fourteen years, and for a term not exceeding the age of twenty-one years, be bound out as apprentices, "or placed out for adoption or as inmates with any families or persons," or transferred to other institutions, such disposition of any child to be evidenced by an indenture with the persons receiving it, the transaction to be recorded at the hospital, and the record to include, among other facts, "the name and address of any person to whom, or institution to which, any child or children may be committed" by the hospital.

By the indenture subsequently made in pursuance of the statute, the child was "placed with and committed unto Thomas and wife for the purpose of adoption by them," to be held by them under the conditions of the indenture until she should attain the age of eighteen years. And it included these clauses: "And the said parties of the second part covenant and agree to take the said child under the conditions of this indenture, and her carefully to rear and maintain until she shall attain said age; to teach her to be useful in housewifery when she shall attain suitable age therefor; to provide her with at least a common school education and suitable clothing, food, medicines and medical treatment, and to adopt and treat her as if she was their own legitimate offspring.

"And the said party of the first part reserves to itself the right to interfere in the said child's behalf and if necessary to reclaim her from the custody of the said parties of the second part, only in case the said parties of the second part shall fail to perform the covenants and conditions herein contained or any of them, on their part to be performed."

There could be no adoption establishing the legal relation of parent and child except under and in accordance with a statute. *Hillers v. Taylor,* 108 Md. 148, 155. And the general Maryland statute providing for such adoption of children was not passed until 1892. Acts 1892, ch. 244 (Code P. G. L., art. 16, secs. 74 to 79). That general statute con-

tained a special provision (section 62E of the original act, and section 78 in the Code), that the term "child" in a will should be held to include any child adopted by the person executing the same unless the contrary should plainly appear by the terms of the will. And there was no earlier statute providing for the inclusion of an adopted child among children entitled to share in an estate, either by construction of a legacy or otherwise. The mother of the appellants was not adopted under the act of 1892; and if she should be entitled to take as a child of Cephas M. Thomas the legacy to such a child in the will of Samuel C. Thomas, it must be by virtue of legal status and rights given her under the statute of 1880, and the indenture made in pursuance of it with the Nursery and Child's Hospital. And our opinion is that the statute and indenture did not confer such status and rights upon her.

As described in the preamble, the authority given by the statute was merely "to bind out and control" the children. The adoption provided for was in the power given "to place them out for adoption or as inmates with any families or persons." The child in this case was actually placed out for only a term, that is, until she should attain the age of eighteen years, and it was only until that time that Thomas and wife expressly undertook any obligations toward her. The Nursery and Child's Hospital reserved a right to interfere on the child's behalf, and to reclaim her if necessary from the custody into which she was given; so her relationship to Thomas, however it might be classified, was temporary, and one subject to supervision and some control by the institution, and terminable by it upon breach of the undertakings of the persons having the child in custody. It is obvious that an adoption so limited and qualified does not create the ordinary status or relationship of parent and child, for the latter is not temporary, and not consistent with control and revocation by a committing institution. And it seems so unlikely that the Legislature would provide a new status and relationship in the law of the state by such a brief, indefinite

provision as that for "placing out for adoption or as inmates with any families or persons," that we think we are not permitted to hold that such was its intention. There is a danger of mistake, now, by reading into the word "adoption" the consequences which have been made familiar to us by the general act of 1892. In 1880 no complete relationship of parent and child, no right to inherit or take in distribution, was necessarily implied by it. On the contrary, the word adoption was popularly used for a mere informal taking under parental care, "or as inmates with families or persons," as this statute of 1880 reads. "Simple adoption of a child," says the Century Dictionary under the word "adoption," "extends only to his treatment as a member of the household; legal adoption may confer upon him any or all the rights of actual relationship." *Crumley v. Worden,* 201 Ill. 105, 116; *Evans' Estate,* 47 Pa. Super. Ct. 196. In *Wallace's Estate,* 218 Pa. 39, an indenture of apprenticeship made with an American Female Guardian Society concluded with a provision that "although the present instrument binds the above named child, strictly as an apprentice, it is, nevertheless, the true intention of the parties of the first part to place, and of the party of the second part to receive, said apprentice as an adopted child, to reside in the family of the party of the second part, and to be maintained, clothed, educated and treated as far as practicable with like care and kindness as if he were in fact the child of the said party of the second part." And of this the court said: "If the fullest meaning of which this clause is susceptible consistent with the before clearly expressed intention of the parties be given it, it refers only to the treatment of the apprentice during the term of apprenticeship. He is to be received as an adopted child would be received, to reside in the master's family, and to be maintained and treated 'with like care and kindness as if he were in fact the child of the party of the second part.' The relation established was to end when the apprentice became of age. There is not the slightest suggestion of an intention to confer upon him any right of inherit-

ance." And while the words used in the present indenture are not identical, the purpose and effect of them seems to us substantially the same as those of the Pennsylvania indenture.

We think the appellants attach greater consequences to the adoption provided for in the Act of 1880 and the indenture than the words used will reasonably bear, and a consequence that is inconsistent with the limitations and conditions placed upon that adoption. And for that reason alone we conclude that the order of the orphans' court must be affirmed.

There were other questions argued, especially one of the effect of the limited nature of the provision in the Act of 1892 (Code, art. 16, sec. 74) that the term "child" in a will shall be held to include "any child adopted by the person *executing the same,*" and another question of the intention of the testator to include among his beneficiaries even a fully adopted child of his brother, if there had been one; but the decision on the meaning and effect of the Act of 1880 and the indenture in pursuance of it render it unnecessary to discuss these later questions. See *Eureka Life Ins. Co. v. Geis,* 121 Md. 196; *Re Leask,* 197 N. Y. 193, and other authorities collected in *Ann. Cas.* 1912A, 326, *L. R. A.* 1918B, 123, and 5 *A. L. R.* 1280.

*Order affirmed.*