# MERCANTILE-SAFE DEPOSIT AND TRUST COMPANY, TRUSTEE, ETC., ET AL. *v.* CAROLYN BAUERNSCHMIDT PURIFOY, ETC., ET AL.

[Misc. No. 3, September Term, 1976.]

*Decided April 4, 1977.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ., and RIDGELY P. MELVIN, JR., Associate Judge of the Court of Special Appeals, specially assigned.

*Daniel H. Honemann*, with whom were *Walter E. Black, Jr.* and *Robert Sloan* on the brief, for George W. Bauernschmidt, et al., part of appellants. *Allan H. Fisher, Jr.*, with whom was *David M. Tralins* on the brief, for Mercantile-Safe Deposit and Trust Company, Trustee, et al., other appellants.

*William A. Snyder, Jr.*, with whom were *Donald C. Greenman* and *Ober, Grimes & Shriver* on the brief, for appellees.

MURPHY, C. J., delivered the opinion of the Court. SMITH and DIGGES, JJ., dissent, and SMITH, J., filed a dissenting opinion in which DIGGES, J., concurs at page 59 *infra*.

This case reaches us from the United States Court of Appeals for the Fourth Circuit, pursuant to the Uniform Certification of Questions of Law Act, Maryland Code (1974) Courts and Judicial Proceedings Article, § 12-601 *et seq.*; that Act authorizes us to answer questions of state law certified by a United States Court of Appeals "which may be determinative of the cause then pending in the certifying court and as to which it appears . . . there is no controlling precedent in the Court of Appeals of this state."

The essential facts are as follows. On October 10, 1972, appellees Carolyn Bauernschmidt Purifoy (Carolyn) and her

mother Grace M. Bauernschmidt (Grace) filed a complaint in the United States District Court for the District of Maryland, seeking a declaratory judgment that under the provisions of Code (1957, 1976 Repl. Vol.), Art. 16, § 78 (c) the terms "child," "children," "descendants" and similar terms used in trust instruments made by various members of the Bauernschmidt family included Carolyn, an adopted child of William Bauernschmidt, Jr. (William), and her descendants. In each trust instrument, a trust was established for the benefit of William. The trustees were directed to pay the income to William for life, with limitation over upon his death to, or for the benefit of, his "child," "children," "descendants," or words of similar import, with alternate limitations over to various contingent remaindermen (the appellants) should William die without leaving any person answering that description surviving him.[1] At the time each trust instrument was executed, William was unmarried and had no natural children.

William died on July 24, 1972 without ever having had a natural child. He had married Grace on January 26, 1940, and her daughter by a prior marriage, Carolyn, who was born on May 31, 1931, resided with them. William adopted Carolyn on January 13, 1948.

Each of the trust instruments — three wills and a deed of trust — was executed and became effective prior to June 1, 1947.[2] At the time the instruments were executed, between 1911 and 1940, adoption of children was authorized by statute which provided that the term "child" or its equivalent in a deed, grant, will or other written instrument "shall be held to include any child adopted *by the person*

---

1. The appellants are William's brother, sister, and certain of his nieces, nephews and cousins.

2. The last will and testament of Margaretha Bauernschmidt, and the first and second codicils thereto were dated, respectively, March 25, 1911, May 11, 1911 and November 22, 1911; they were admitted to probate on December 18, 1912. The deed of trust from William Bauernschmidt, Sr. was dated July 12, 1924 and deeds supplemental thereto were dated March 16, 1925 and November 25, 1930. The last will and testament of William Bauernschmidt, Sr. was dated June 25, 1934 and was admitted to probate on December 27, 1934. The last will and testament of Sarah Bauernschmidt, and first codicil thereto, dated January 17, 1935 and March 28, 1940, respectively, were admitted to probate on November 3, 1941.

*executing the same,* unless the contrary plainly appears by the terms thereof, whether such instrument be executed before or after the adoption." (emphasis supplied) [3] In *Eureka Life Ins. Co. v. Geis,* 121 Md. 196, 88 A. 158, decided in 1913, it was held that an adopted child could not, "by the provisions of the [quoted] statute," take a remainder interest under a will left to a "child" of an adoptive parent by the parent's lineal or collateral kindred.

By chapter 599 of the Acts of 1947, Maryland's adoption law underwent a major revision, the purpose of which was to accord adopted children all of the legal rights of natural children. The statute declared that "there shall be no distinction between a legally adopted child and a child by birth, to the end that such adopted child shall take from, through and as a representative of its adopting parent or parents and the lineal or collateral kindred of such adopting parent or parents in the same manner as a child by birth. . . ." The statute also provided, in a section later codified as Code (1957 ed.), Art. 16, § 78 (c), that the term "child," or its equivalent in a deed, grant, will or other written instrument:

> "shall be held to include any adopted person, unless the contrary plainly appears by the terms thereof, whether such instrument was executed before or after the entry of the . . . decree of adoption."

The Act took effect on June 1, 1947, with the proviso that it "not affect any adoption for which a final decree was entered before June 1, 1947 . . . ."

Chapter 599 of the Acts of 1947 was declared "on its face . . . clearly prospective and not retrospective" in *Gutman v. Safe Deposit & Trust Co.,* 198 Md. 39, 81 A. 2d 207, decided in 1951. That case involved a will probated in 1923 in which the testatrix had left a life income trust to her son, with a remainder to his child or descendant. The son died in 1948 and a child adopted by him in 1928 was held not entitled to take the remainder interest. The Court said that the only

---

3. The general statute providing for adoption of children was enacted as chapter 244 of the Acts of 1892.

way the adopted son could share in the estate of his adoptive grandmother was if it decided that the Act of 1947 was retrospective; it declined to do so, noting that "The Legislature did not intend to disturb her will, and rights which had become vested under it, for it enacted that the Act should not go into effect before June 1, 1947." 198 Md. at 44, 81 A. 2d at 209.

By chapter 287 of the Acts of 1961, the Legislature amended Art. 16, § 78 (c) "to clarify," according to the Act's title, "the legal effect of the use of the terms 'child', 'heir', 'issue' and 'descendant' or an equivalent in an instrument executed prior to June 1, 1947." As reenacted, § 78 (c) provided as follows (the new matter added to the section by the 1961 amendment being italicized):

"The term 'child', 'heir', 'issue', *'descendant'* or an equivalent in a deed, grant, will or other written instrument shall be held to include any adopted person, unless the contrary plainly appears by the terms thereof, whether such instrument was executed before or after the entry of the . . . decree of adoption; *in the event such instrument was executed prior to June 1, 1947, the provisions of this sub-section (c) shall apply to those adopted persons as to whom the . . . decree of adoption was entered on or after June 1, 1947.*"

In determining whether Carolyn was included as a "child" or "descendant" of William under the trust instruments in question, the District Court said that the *"threshold issue"* in the case was "whether Article 16, § 78 (c), as amended in 1961, renders the Act of 1947 retrospective." *Purifoy v. Mercantile-Safe Deposit and Trust Co.*, 398 F. Supp. 1075, 1081 (D. Md. 1974). After noting that this question involved only the construction of a state statute, and did not entail consideration of rights guaranteed by the federal constitution, it said:

"if the statute is held prospective, no constitutional issue is raised. It is only if a retroactive construction is placed on the statute that a second

and separate issue emerges — whether the retroactive statute divests vested property rights in violation of the due process clause of the fourteenth amendment."

* * *

". . . [T]he construction of the Maryland adoption statute is by no means clear. There is merit to the arguments of both parties. The plaintiffs [appellees] contend (1) that the plain meaning of the 1961 amendment makes the 1947 statute retroactive to all instruments executed prior to 1947 when the 'child' in question was adopted after June 1, 1947, and (2) that the *Gutman* decision does not control this case, because in *Gutman* the adoption took place before June 1, 1947 and the 1961 amendment was not before the Court. The defendants [appellants] reply claiming (1) that the 1961 amendment covers only those wills executed prior to June 1, 1947, but *effective* after June 1, 1947; (2) that *Gutman* expressly held the 1947 adoption statute prospective; and (3) that the Legislature had no intention of rendering the statute retroactive by the 1961 amendment as evidenced by the lack of any debate or legislative history. . . ." 398 F. Supp. at 1081.

The District Court certified the "threshold issue" of statutory interpretation for our consideration under the Uniform Certification of Questions of Law Act. We answered the question, stating that the 1961 amendment to § 78 (c) "renders the Act of 1947, chapter 599, retrospective, so that the terms 'child,' 'children,' 'descendants,' and the equivalent in instruments executed and effective prior to June 1, 1947, include adopted children where the adoption occurred after June 1, 1947." *Purifoy v. Merc.-Safe Dep. & Trust*, 273 Md. 58, 67, 327 A. 2d 483, 488 (1974). We were not asked in *Purifoy* and did not consider the actual intent of the makers of the trust instruments with respect to adopted children or whether the provisions of § 78 (c) were

applicable. Nor did we express any opinion on the federal constitutional question of whether the 1961 amendment to § 78 (c) violated the Fourteenth Amendment, that issue not being one of "state law" properly certifiable under the Act.

The District Court thereafter disposed of the case on its merits. *Purifoy v. Mercantile-Safe Deposit and Trust Co.,* 398 F. Supp. 1082 (D. Md. 1975). It held, following an evidentiary hearing, that it was impossible to determine from the face of the instruments and the surrounding circumstances whether the testators and settlor actually intended to include or exclude adopted children. It said that it could not determine whether the contingency of adoption was ever considered because no actual intention concerning adopted children was present. It concluded, in view of our opinion in *Purifoy* establishing the retroactive operation of § 78 (c), that the only remaining issue was whether applying that section retrospectively to the facts of the case constituted a violation of the federal constitutional rights of the alternative contingent remaindermen. The court held:

> "Article 16, § 78(c) is a rule of evidence and not a rule of substantive law. The statute does no more than create a rebuttable presumption that terms such as 'child,' 'heir,' 'issue,' and 'descendant' include adopted persons. By the terms of the statute, any person aggrieved by this presumption may rebut same by introducing other evidence of a contrary intent plainly appearing from the terms of the instrument. Thus, the effect of Article 16, § 78(c) is merely to establish a prima facie case in favor of the adopted child and to place upon those opposing inclusion of the adopted child the burden of going forward with evidence of a contrary testamentary intent. By allocating the burden of proof, the statute operates as a rule of evidence. . . .

> "It is a fact, determined by this Court in its prior opinion, that defendants have failed to carry the burden of going forward with evidence of an actual intent to exclude adopted children from the

meaning of the terms 'children' or 'descendants' in the various trust instruments. This fact being established, it is clear that no denial of due process arises from adherence to the legislative presumption contained in Article 16, § 78(c). . . .

"Considering the statute at issue in this proceeding, it cannot be said that a rational connection is lacking between the fact established (defendants' failure to show an actual intent to exclude adopted children) and the ultimate fact presumed (judicially ascertained intent to include adopted children within the terms of the instrument). Such a presumption comports with wide human experience and has been adopted in other jurisdictions. [Citation omitted.] Since this Court cannot find the presumption contained in Article 16, § 78(c) to be 'so unreasonable as to be a purely arbitrary mandate,' *Mobile, Jackson & Kansas City R.R. v. Turnipseed,* [219 U.S. 35, 43, 31 S. Ct. 136, 138, 55 L. Ed. 78, 89 (1910)], it must follow that no constitutional deprivation of due process results from operation of the statute.

"Having found Article 16, § 78(c) to be a rule of evidence and not a rule of substantive law, it is unnecessary for this Court to decide whether the interests of defendants in the five trust instruments are vested or contingent. In either case, no constitutional deprivation of due process would result from operation of an evidentiary presumption created by the legislature." 398 F. Supp. at 1084-85.

The District Court's judgment thus declared that the terms "child," "children," "descendants," "issue" and similar terms used with respect to the trusts created for William included Carolyn.

On appeal of the District Court's judgment, the United States Court of Appeals for the Fourth Circuit determined that it could not adequately and fully pass upon the federal

constitutional issues in the case until "we are advised by the Court of Appeals of Maryland of the meaning of the several instruments before us." Availing itself of the provisions of the Uniform Certification of Questions of Law Act, it asks that we construe the controlling Maryland statutes and apply them "to the non-statutory incidents of the testamentary and trust instruments involved in this suit." It asks that we "declare whether the instruments involved . . . speak as of the date of their execution or of the date of their effectiveness, and further to determine from the words of the testamentary and trust instruments these points: (1) the intent of the makers of these documents in respect to the distribution, after the death of William Bauernschmidt, Jr., of the shares therein allotted to him for life, and (2) in whom and when the said shares vested ultimately and absolutely."

The parties agree that the Fourth Circuit has certified these questions for our consideration:

1. Is Carolyn included within the terms "child," "children," "descendants," and similar terms used in the trust instruments?

2. Does Article 16, § 78 (c), as amended by chapter 287 of the Acts of 1961, apply to the instruments in question?

3. Do the instruments in question speak as of the date of their execution or as of the date of their effectiveness?

4. What is the intent of the makers of the instruments in question in respect to the distribution, after William's death, of the shares therein allotted to him for life?

5. In whom and when do the shares allotted to William for life under the terms of the trust instruments vest ultimately and absolutely?

Under the Uniform Certification of Questions of Law Act, we consider only questions of state law, not questions of fact or questions of federal constitutional law. Courts Article, § 12-601; *In re Richards*, 223 A. 2d 827 (Maine, 1966). We note in this connection that the issue with respect to the

meaning of the trust instruments does not require us to determine a question of fact; rather it posits a question of state law, *i.e.*, whether the District Court, in concluding that the makers of the trust instruments had no actual intention with respect to adopted children, misapplied applicable Maryland rules of construction.

As amended in 1961, § 78 (c) applies to trust instruments executed prior to June 1, 1947, where the child was adopted after June 1, 1947; it expressly provides that the terms "child," "heir," "issue," "descendant" or equivalent terms used in such instruments "shall be held to include any adopted person, unless the contrary plainly appears by the terms thereof, whether such instrument was executed before or after the entry of the . . . decree of adoption."

Appellants say that § 78 (c) does not apply to the trust instruments here involved because they were executed by lineal and collateral kindred of, rather than by, the adoptive parent; hence, the intent of the makers not to include adopted children under the limitations to "child," "children," and "descendants" plainly appears by the terms of the instruments. That the makers of the trust instruments intended their bounty to go only to their blood relatives to the exclusion of any child that might be adopted is so, appellants contend, because at the time the instruments were executed terms such as "child," "children" and "descendants" were understood and interpreted under then existing Maryland law to mean only a natural child, the sole exception being where the trust instrument was executed by an adoptive parent. Appellants claim that under well-settled Maryland law, a testator is presumed to know the law as it existed when he made his will, and that in determining the maker's intent courts should give to the words used the meaning which they had at the time they were used, viz., that they be understood in the sense which long usage and court decisions had attached to them at the time they were used, rather than in a different sense which a statute had ascribed to them since the instrument was made.

The appellees contend that there is no language in any of the instruments evincing an actual intent either to include

or exclude adopted children. They say that in these circumstances, no contrary intent plainly appearing, the provisions of § 78 (c) clearly and expressly require that adopted children be included. Appellees maintain that no etched-in-concrete meaning had attached to the terms "child," "issue" and the like at the time the instruments were executed, nor were there definitive Maryland rules as to what law applied to construe a future class of "children," *i.e.*, the law when the instrument was executed or when the class was to be determined. Appellees view *Eureka Life Ins. Co. v. Geis, supra,* as deciding only that the statute applicable in 1913 when that case was decided had at best created a rebuttable presumption to include adopted children only if adopted by the maker of the instrument; that this was an evidentiary rule to assist courts in deciding cases where no actual intent could be gleaned from the instrument; that the rule was subject to change by subsequent legislative enactment, a fact well understood by grantors who would not rely on words with changeable statutory meanings to express their intent, particularly where a future class was involved; and that had they wished to exclude adopted children, they would specifically have referred to blood descendants, natural children, or other descriptions of that nature. Appellees argue that *Eureka* did not establish an immutable rule of law expressive of animus against or an intention to exclude adopted children. Thus, appellees claim that any argument that an actual intent is discernible simply because the old presumption was in effect when the instruments were executed is unfounded; and that since no intention plainly appears by the terms of the instruments, the meaning ascribed by § 78 (c) must be applied.

Of course, in determining whether William's adopted child is to be included as a beneficiary under the trust instruments, the actual intention of the makers of the documents, if ascertainable, is controlling. *Scott v. Shuffler,* 269 Md. 432, 306 A. 2d 531 (1973); *Davis v. Mer.-Safe Dep. Co.,* 235 Md. 266, 201 A. 2d 373 (1964). By its enactment of § 78 (c), the Legislature plainly recognized that the bare

use of terms such as "child," "issue," "heir" and their equivalent in trust instruments sheds no real light on the maker's actual intent with respect to adopted children. Section 78 (c) was designed to operate as a legislatively mandated rule of construction to guide the courts in ascertaining that intention by, in effect, creating a presumption in favor of the inclusion of children adopted after June 1, 1947. By applying the presumption retroactively to embrace instruments executed prior to June 1, 1947, the Legislature decreed that, absent a contrary intention plainly appearing from the terms of the instrument, adopted children would be encompassed within the meaning of the term "child" and similar terms. By force of the statutory language contained in § 78 (c) a determination respecting membership in a class of "children" to be ascertained in the future is governed by the law in effect at the time membership in the class is determined, *i.e.*, by reference to the provisions of § 78 (c), unless the maker expressed an actual intention that the future class determination be governed by the law in effect at a different time. In this latter connection, choosing the law of a time which would favor the adopted child conforms with the social policy underlying the revision of the State's adoption laws, since it encourages the full integration of the adopted child into its adoptive family. In dealing with other statutes relating to adoption, we have said that they "should be construed liberally to aid, rather than hamper and frustrate, their benevolent purpose, and their application should not be restricted by any forced or narrow construction." *Waller v. Ellis*, 169 Md. 15, 24, 179 A. 289, 293 (1935). The explicit directions of § 78 (c) to apply the post-1947 presumption to future class determinations under pre-1947 instruments is plainly consistent with this philosophy and requires, absent a contrary intent expressed in the document, application of the law in existence when the interest vests or the beneficiaries are fixed.[4]

---

4. Where, as here, the gifts to the "children" or "descendants" are in the nature of class gifts, *i.e.*, to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, the class can be determined by reference to the law in force when the instrument was

The District Court's conclusion that no actual intention with respect to adopted children was discernible from the terms of the instruments, and inferentially that membership in the class was to be determined with reference to the provisions of § 78 (c), constitutes a proper application of governing principles of Maryland law to the facts before it. As a consequence, we answer the first three certified questions as follows: (1) the District Court having found as a fact that there was no intent plainly appearing in any of the trust instruments to exclude adopted children, the provisions of § 78 (c), as amended in 1961, are applicable; (2) Carolyn, an adopted child, is included within the terms "child," "children," "descendants," and similar terms used in the four trust instruments here involved; [5] (3) for purposes of determining the status of adopted children under terms such as "child," "children," "descendants," or an equivalent, the instruments speak as of the time the class is to be determined, pursuant to the express retrospective direction of § 78 (c).

The fourth certified question inquires as to "the intent of the makers" of the instruments concerning "distribution, after William's death, of the shares therein allotted to him for life." In view of our answers to the first three certified questions, it necessarily follows that the provisions of § 78 (c), as amended in 1961, being applicable retrospectively to pre-1947 instruments, upon William's death in 1972 the shares allotted to him for life go to Carolyn if an intention to exclude adopted children does not plainly appear by the terms of the instruments.

In answer to the fifth certified question, Carolyn's interest in the remainder to William's children, assuming her

executed, when it became effective, or when the beneficiaries become fixed or the interest vests; there is no hard and fast rule regarding the law applicable to the ascertainment of a future class where the instruments do not evince any intent regarding applicable law. Baker v. Baylies, 231 Md. 287, 189 A. 2d 820 (1963). Nothing in Gutman v. Safe Deposit & Trust Co., *supra*, calls for a contrary conclusion.

5. This includes Carolyn's status as a child of William by his surviving widow (Grace), within the meaning of the words "if there be children of such son by said widow surviving" in paragraph 4 of the Deed of Trust of William Bauernschmidt, Sr., dated November 25, 1930.

inclusion as a beneficiary under the trust instruments, vested in 1961 when the 1961 amendment to § 78 (c) afforded retroactive application to pre-1947 instruments, and that interest vested absolutely in 1972 when William died.

As earlier indicated we neither make nor review factual findings, or pass upon questions of federal constitutional law under the certification statute. Both factual and constitutional issues lie at the heart of this case and we recognize the obvious difficulty encountered by the Fourth Circuit in articulating questions of state law which did not implicate underlying factual or constitutional issues. Indeed, our guarded response to the certified questions reflects our own difficulty in divorcing the state law questions from the intricate factual and constitutional issues involved.

Despite our jurisdictional limitations, the parties have briefed and argued the question whether appellants' interests as contingent remaindermen under the trust instruments are constitutionally protected and therefore not subject to retrospective divestiture by operation of the provisions of § 78 (c), as amended in 1961. We, of course, express no opinion on this question. Nor do we express any view with respect to the specific issue raised by appellants, but not briefed by appellees, nor presented as a certified question by the Fourth Circuit, of whether appellants' interests under the trust instruments were alienable in assessing whether those interests possessed economic substance and real value and were therefore vested in the constitutional sense and entitled to constitutional protection.

> *Questions of law answered as herein set forth; costs to abide the result.*

*Smith, J., dissenting* :

I respectfully dissent.

We recently said in *Wesley Home v. Merc.-Safe Dep. & Tr.*, 265 Md. 185, 198, 289 A. 2d 337 (1972), that "the cardinal

principle of construction of wills [is] that the intention of the testator be carried out, as deduced from the 'four corners' of the will," citing a number of Maryland cases. I regard it as manifestly improper to divine that intention by making use of a statute that did not come into existence until many years after the effective date of the instruments in the absence of a clear indication in the instruments that law of a later date should be used. I believe such use of later law in this construction is not in accord with the law of Maryland. I say this because the principle is well established in Maryland that a will is to be construed according to the law in force at the time it takes effect.

In *James v. Rowland*, 52 Md. 462 (1879), our predecessors were confronted with a question closely analogous to that with which we are here concerned. A will was executed in 1848 and probated in 1849. The will referred to certain things that should take place if the testator's grandson "should die without heirs . . . ." By Chapter 161 of the Acts of 1862 (later, without change, Md. Code (1957) Art. 93, § 365, and now, with stylistic changes, Code (1974) § 4-410 Estates and Trusts Article) the General Assembly provided for the meaning to be accorded to "the words 'die without issue,' or 'die without leaving issue,' or any other words which may import either a want or a failure of issue of any person in his lifetime, or at the time of his death, or an indefinite failure of his issue . . . ." Judge Irving there said for our predecessors:

"The question is, what estate did Watkins James, son of Bennett James, take in the land in question? It is perfectly clear that if Watkins should be living at the death of Bennett, the testator intended him to take a fee, and used the most apt words to effect that purpose. The only question is, are there any words in the will making a fee defeasible at any time; and making a good, executory devise over? The Act of 1861-2, ch. 161, regulating the construction of certain doubtful expressions in a will, cannot be resorted to in aid of the construction

of this will, which took effect and created vested interests in 1849. Like the statute of England of 1837, from which it was evidently copied, it creates a change in the common rule of interpretation, and only affects wills made and executed afterwards, for the patent reasons that the testator is always to be understood as using the words employed, in the sense attaching to them at the time he uses them, and that the devisee is entitled to the construction they would have received at the time they became operative, had the question arisen, without being affected by an after-established statute, applying a new meaning to the words." *Id.* at 466-67.

Similar statements relative to that statute are found in *Benson v. Linthicum*, 75 Md. 141, 144, 23 A. 133 (1891); *Comegys v. Jones*, 65 Md. 317, 320-21, 4 A. 567 (1886); *Dickson v. Satterfield*, 53 Md. 317, 322 (1880); and *Estep v. Mackey*, 52 Md. 592, 596 (1879).

In *Magruder v. Carroll*, 4 Md. 335 (1853), our predecessors pointed out with reference to a change which took place in our statutory law prior to the death of the decedent:

"The law imputes knowledge to him of the provisions of the act of 1849, and the interpretation it would receive. He had ample time to alter his will, and failing to do so must be considered as having intended all his property real and personal should pass under it." *Id.* at 350.

In *Johns v. Hodges*, 33 Md. 515, 526 (1871), the Court again said, that time referring to the act of 1849, that the will "must be governed by the law as it existed when [it] was made, independent of this provision of the Code."

In *Krieg v. McComas*, 126 Md. 377, 382, 95 A. 68 (1915), Judge Stockbridge said for the Court that since "[t]he will and deed of trust were executed and the death of Ellen Vernon occurred prior to the passage of [Chapter 249 of the Acts of 1888, then Code (1912) Art. 93, § 330] . . . the Act cited could in no way apply . . . ."

In *Bartlett v. Ligon,* 135 Md. 620, 626, 109 A. 473 (1920), the Court said that "it [was] to be presumed that [the testatrix] made her will in view of the law as it stood when she made it . . . ."

The Court was concerned with a will probated in 1920 in *Livingston v. Safe Dep. & Tr. Co.,* 157 Md. 492, 146 A. 432 (1929). There a legatee had died a few days before the testatrix. The testatrix was mentally incompetent at the time of the death of the legatee and remained so until her own death. The 1910 lapsed legacy statute provided that it should not apply in the case of a person who died after the passage of the act where after the execution of the will and before the death of the legatee the testatrix became insane or otherwise incompetent. This law was repealed by Chapter 202 of the Acts of 1920, subsequent, however, to the death of the testatrix. The Court said:

> "[A]s the rights of all parties to this appeal became fixed and vested at a point of time certainly not later than the death of the testator, they must be determined in accordance with the law as it existed then . . . ." *Id.* at 496.

As Judge Singley pointed out for the Court in *Weller v. Sokol,* 271 Md. 420, 430, 318 A. 2d 193 (1974), *Evans v. Safe Deposit & Trust Co.,* 190 Md. 332, 347, 58 A. 2d 649 (1948), stands for the proposition that the rules of construction to be applied to a will "are those which were recognized at the time the will took effect . . . ." More recently in *Sokol v. Nattans,* 26 Md. App. 65, 71, 337 A. 2d 460, *cert. denied,* 275 Md. 755 (1975), Chief Judge Orth of the Court of Special Appeals (now a member of this Court), after stating the amount of compensation properly due the trustees, said for the court that "[i]n so construing the will [the court] look[ed] to the status of the law at the time [the will] was executed."

E. Miller, *Construction of Wills* § 3, at 11-12 (1927), in a footnote considers the question of "[w]hether a statute applies to a will made before the passage of the statute," a "subject [which he says] belongs to the interpretation of

statutes rather than to the construction of wills." He there cites *Bartlett, Krieg, Benson, Comegys, Dickson, Estep, James,* and *Johns* as I have cited them.

In footnote 4 the majority opinion states:

> "Where, as here, the gifts to the 'children' or 'descendants' are in the nature of class gifts, *i.e.,* to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, the class can be determined by reference to the law in force when the instrument was executed, when it became effective, or when the beneficiaries become fixed or the interest vests; there is no hard and fast rule regarding the law applicable to the ascertainment of a future class where the instruments do not evince any intent regarding applicable law. Baker v. Baylies, 231 Md. 287, 189 A. 2d 820 (1963). Nothing in Gutman v. Safe Deposit & Trust Co., [198 Md. 39, 81 A. 2d 207 (1951)], calls for a contrary conclusion."

What the Court said in *Baker v. Baylies,* 231 Md. 287, 189 A. 2d 820 (1963), is:

> "The will gives persuasive evidence, we find, that the testator intended the law in force when it was made (and when it was probated) to control the determination of those who would be his heirs at the termination of the last life estate. He had the right to use any yardstick he chose which did not violate the law. Whether a testator intends that beneficiaries, classes or interests are to be determined by the law in force (a) when the will is made, (b) when he dies, or (c) when the beneficiaries are fixed or the interest vests is a question of his intent to be deduced from the language of the will, read in the light of the surrounding facts and circumstances. 4 *Page, Wills* (Bowe-Parker Rev.), Sec. 30.8 at 60; 5 *American Law of Property* Sec. 22.60; *Thom v. Thom, supra* at pp. 457 and 458 of 101 Md." *Id.* at 293.

The Court there was concerned with the construction of a will and the question presented was whether the taker of the ultimate remainder should be determined upon the basis of the law in effect at the time of the death of the testator or on the basis of the law in effect when the last surviving life tenant died without issue. I have no quarrel with the statement there appearing that the testator "had the right to use any yardstick he chose which did not violate the law." The concern of the Court in *Thom v. Thom*, 101 Md. 444, 458, 61 A. 193 (1905), was with an instrument which provided "that upon failure of the exercise of [the specified] powers *then* 'In trust for such person or persons as would by the now existing laws of Maryland be the heirs at law,' &c." (Emphasis in original.) I do not dispute the validity of the statement that if there is something in a will indicating that a will is to be interpreted by the law in force at a later time, such provision would be valid and would govern. In the case at bar, however, we have no such provision in any of the instruments. I thus find repulsive and preposterous the proposition that a skilled scrivener, a testator, or a settlor would and should be obliged to anticipate that the General Assembly of Maryland in its wisdom might see fit at a later date to ordain that the terms "child," "children," "descendants," and similar terms used in these instruments should be interpreted in a manner other than was commonly understood at the time of the preparation of the instruments in question. It seems to me that to so hold means that we do not place ourselves in the position of a testator and thus do not determine his intention "from the 'four corners' of the will." In this regard it must be remembered, as the majority correctly states, that it was not until 1892 with the passage of Chapter 244 of the Acts of that year that a general statute was enacted providing for adoption of children. Moreover, our predecessors held in *Hillers v. Taylor*, 108 Md. 148, 69 A. 715 (1908):

> "The adoption of children, although a practice of great antiquity recognized by the civil law throughout its entire history and observed in

countries whose jurisprudence is founded on that law, was unknown to the common law and exists in States, which have inherited that system of jurisprudence, only by virtue of statute. *A. & E. Encycl.*, vol. 1, p. 726; 1 *Cyc.*, 917." *Id.* at 155-56.

*See also Zimmerman v. Thomas*, 152 Md. 263, 265, 136 A. 637 (1927). The first of the instruments with which we are here involved was written but 19 years after the passage of that act in 1892 and but three years after the decision in *Hillers*. Then, as the majority correctly notes, our predecessors held in *Eureka Life Ins. Co. v. Geis*, 121 Md. 196, 199, 88 A. 158 (1913), that an adopted child could not take a remainder interest under a will left to a "child" of an adoptive parent by the parents' lineal or collateral kindred.

I regard the decisions of our predecessors relative to the interpretation to be given such terms as "die without issue" or "die without leaving issue" as dispositive of the issue here.

It will be noted that in our cases construing the applicability of Chapter 161 of the Acts of 1862 the Court did not rest its decision upon constitutional grounds. Of course, the first of those cases was decided but a short time after the adoption of the Fourteenth Amendment to the Constitution of the United States. However, our forebearers in 1776 incorporated into Art. 21 of the Declaration of Rights of the Constitution of that year a provision "[t]hat no freeman ought to be . . . deprived of his . . . property, but by the judgment of his peers, or by the law of the land." Basically the same proposition is found in our present Declaration of Rights, Art. 23 and was found in each of our earlier Constitutions. *See* Constitutional Convention Commission, *Constitutional Revision Study Documents* 610-11 (1968). As recently as last year in *Barry Properties v. Fick Bros.*, 277 Md. 15, 22, 353 A. 2d 222 (1976), Judge Digges quoted for the Court from *Bureau of Mines v. George's Creek*, 272 Md. 143, 156, 321 A. 2d 748 (1974), to the effect that the due process clauses of our Art. 23 and of the Fourteenth Amendment to the Constitution of the United States "have the same

meaning and effect in reference to an exaction of property, and that the decisions of the Supreme Court on the Fourteenth Amendment are practically direct authorities [as to the proper interpretation of Article 23]." He also cited *Allied American Co. v. Comm'r*, 219 Md. 607, 615-16, 150 A. 2d 421 (1959), and *Goldsmith v. Mead Johnson & Co.*, 176 Md. 682, 686-87, 7 A. 2d 176 (1939).

It seems to me that this Maryland constitutional provision is yet another reason for holding that under Maryland law the provisions of Code (1957, 1973 Repl. Vol., 1976 Cum. Supp.) Art. 16, § 78 (c) may not be interpreted as applying retrospectively to the determination in this case of whether the terms "child," "children," "descendants," or equivalent terms in the instruments in question include an adopted child, a question not propounded to us or considered by us in *Purifoy v. Merc.-Safe Dep. & Trust*, 273 Md. 58, 327 A. 2d 483 (1974).

There are numerous decisions of this Court to the effect that a statute, even if the General Assembly so intends, will not be applied retrospectively to divest or adversely affect vested rights, to impair the obligation of contracts, or so as to violate the due process clause. *See, e.g., Smith v. Westinghouse Electric*, 266 Md. 52, 57, 291 A. 2d 452 (1972); *Janda v. General Motors*, 237 Md. 161, 169, 205 A. 2d 228 (1964); *Harris v. Whiteley*, 98 Md. 430, 442, 56 A. 823 (1904); *Remington v. Metropolitan Bank*, 76 Md. 546, 548, 25 A. 666 (1893); and *Rock Hill College v. Jones*, 47 Md. 1, 17 (1877).

The instruments here involved provide in essence for a life estate in William Bauernschmidt, Jr., with remainder to his surviving children and descendants. In the event, however, that he died without leaving surviving children or descendants, then the remainder was to pass to those persons who are appellants here. Without becoming involved in a discussion as to whether the interests of the appellants were descendible, devisable, and assignable prior to the death of William Bauernschmidt, Jr., I am persuaded that there is such a vested right as is constitutionally protected. *See, e.g.,* relative to contingent remainders and whether they are descendible, etc., *In re Moore*, 22 F. 2d 432 (D. Md.

1927); *In Re Clayton's Trust Estate*, 195 Md. 622, 625-26, 74 A. 2d 1 (1950); *Evans v. Safe Deposit & Trust Co., supra*, 190 Md. at 347; *Hammond v. Piper*, 185 Md. 314, 319, 44 A. 2d 756 (1945); *Hans v. Safe Dep. & Tr. Co.*, 178 Md. 52, 63, 12 A. 2d 208 (1940); *Reilly v. MacKenzie*, 151 Md. 216, 225, 134 A. 502 (1926); R. Reno, *Further Developments as to the Alienability and Transmissibility of Future Interests in Maryland*, 15 Md. L. Rev. 193, 197-98 (1955); and R. Reno, *Alienability and Transmissibility of Future Interests in Maryland*, 2 Md. L. Rev. 89 (1938). I find persuasive on this subject the statement in 1 L. Simes and A. Smith, *Future Interests* § 136 (2d ed. 1956):

> "It is frequently said that 'vested rights' are the subject of the protection of constitutional guaranties, such as the due process clause of Federal and State Constitutions and the clause prohibiting the taking of private property for public use without compensation. Doubtless the term 'vested' when so used begs the question, since it is assumed that it has already been determined that the right in question will be protected. It seems clear, therefore, that the term, if used at all in connection with constitutional questions, should not be regarded as synonymous with the same expression when used in the law of real property. In other words, there is no rule to the effect that a vested remainder is protected under Federal and State Constitutions but a contingent remainder is not. Indeed, it would be most unfortunate if such were the law; for many contingent future interests are of far more substantial character and more likely to take effect in possession than some future interests which are vested subject to be divested. However, some courts have taken the position that a statute which operates to destroy a contingent future interest does not violate the constitutional guaranties mentioned above because it is not a vested interest. The only conceivable basis for such

68

a decision would seem to be that a contingent interest is not the 'property' of the holder thereof; it is something which he may have in the future, but it is not property now. This clearly begs the question as to whether the particular interest ought to be protected. The contingent interest, though perhaps not an estate, has achieved status as a protectable interest for many purposes. Doubtless the so-called future interest given to unborn persons, or the bare expectancy of an heir apparent are extremely tenuous interests so far as present legal relations are concerned. But to leap to the conclusion that because some contingent interests are too tenuous to bear the label of 'property' that therefore all contingent interests are not 'property' is totally unwarranted. When a contingent remainder is limited to an existing ascertained person there is no question but that the courts will recognize the interest as having present existence. The wide acceptance of that fact makes it clear that the interest is 'property' in the usual sense of the word. Whether a given future interest is of a sufficiently substantial character to be given the protection of a particular constitutional guaranty would seem properly to depend upon factors other than the classification as vested or contingent." *Id.* at 116-18.

I regard the retrospective application of the adoption statute to the instruments here as a clear violation of the Maryland Declaration of Rights and I would answer the questions propounded accordingly.

I am authorized by Judge Digges to say that he concurs in the views here expressed.